

## NUMBER 13-07-00624-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

W. SCOTT McCOLLOUGH AND DAVID BOLDUC,                    Appellants,

v.

TEXAS PUBLIC UTILITY COMMISSION,                    Appellee.

**On appeal from the 98th District Court
of Travis County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Vela
Memorandum Opinion by Justice Rodriguez**

This is an appeal from sanctions imposed by the Texas Public Utility Commission

(PUC or the Commission) against attorney appellants, W. Scott McCollough and David

Bolduc, and the telecommunications company they represented in an arbitration before the

Commission. Appellants challenge the final order of the trial court in favor of appellee PUC

dismissing appellants' claims for judicial review of Commission orders assessing sanctions against appellants.[1]  Appellants bring four issues on appeal:  (1) the trial court erred in granting the PUC's plea to the jurisdiction and dismissing Bolduc from the case on the grounds that he suffered no adverse order from which to appeal; (2) the trial court erred in granting the PUC's motion to dismiss appellants' claims on the basis of collateral estoppel; (3) the trial court erred in affirming the Commission's sanctions orders on the merits; and (4) the trial court erred in granting the PUC's plea to the jurisdiction and dismissing appellants' claims for declaratory judgment.  We affirm.

## BACKGROUND

This case arises from a mandatory arbitration under the federal Telecommunications Act of 1996, which delegates authority to the Commission to conduct arbitrations between incumbent telecommunications companies and startup competitors negotiating interconnection agreements.[2]  *See* 47 U.S.C. § 252(b)(4) (2006); P.U.C. PROC. R. 21.95.  McCollough represented a startup company, Affordable Telecom, in its

---

[1]  This case is before us on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas.  *See* TEX GOV'T CODE ANN. § 73.001 (Vernon 2005).

[2]  Under the Telecommunications Act, incumbent local exchange carriers have a duty  to negotiate agreements with new carriers for interconnection to the local exchange carrier's network.  47 U.S.C. § 251(c)(1) (2006).  An incumbent local exchange carrier is defined as the local exchange carrier that "on February 8, 1996, provided telephone exchange service" in a particular area and "was deemed to be a member of the exchange carrier association" or "is a person or entity that, on or after February 8, 1996, became a successor or assign of a member of the exchange carrier association."  *Id*. § 251(h)(1).  The incumbent carrier has a duty to provide to any requesting carrier interconnection with the local network:
> for the transmission and routing of telephone exchange service and exchange access . . . at any technically feasible point within the carrier's network . . . that is at least equal in quality to that provided by the local exchange carrier to itself or to any subsidiary, affiliate, or any other party to which the carrier provides interconnection . . . on rates, terms, and conditions that are just, reasonable, and nondiscriminatory . . . .

*Id*. § 251(c)(2).

2

arbitration with Southwestern Bell Telephone (SBC).[3] During the arbitration, a discovery dispute arose between the parties. Affordable claimed that customer information sought by SBC through discovery contained protected, private information and objected to production of the information.

After filing Affordable's objections, McCollough sent an email to counsel for SBC conveying his disappointment with the situation. The email contained several inflammatory statements, including the following: "I guess I have to no longer be open, honest, and forthcoming with you—or any other SBC counsel—in the future"; "SBC apparently is wholly invested in making sure the system does not work, and it hires unethical lawyers to make it so"; and "When I was in the Marines, the first thing they taught me [was] that if the enemy is in your range, then you are in the enemy's range as well. Keep that in mind, culo." SBC then filed a motion to compel production of the information Affordable claimed it could withhold.

The arbitrators issued an order granting portions of SBC's motion to compel. In response to the order, Bolduc emailed the arbitrators to inform them that Affordable would be appealing the order compelling production of certain customer information.[4] The email also informed the arbitrators that Affordable had posted a warning to its customers on its website advising them of the nature of the ordered disclosure. The warning was titled "Urgent Privacy Statement" (Privacy Statement) and read in relevant part:

_____

[3] The merits of that proceeding are not at issue in this appeal.

[4] Bolduc was hired by Affordable to assist in drafting the appeal of the arbitrators' order compelling production.

3

**Consistent with [our privacy] policy, we are providing NOTICE to you that we have been ordered by the Texas PUC to disclose to Southwestern Bell Telephone ALL the information we have about you, including the services we provide to you and your use of them, and also including the content of communications you have sent or received while using our service—to the extent we have it in our possession.  We are also providing you with an opportunity to protect your privacy rights.** . . .

We cannot recommend that you directly contact the PUC.  First, that will necessarily reveal your identity to some extent.  Further, we are prohibited by law from suggesting that non-parties to the case submit comments or information unless they follow several complicated filing requirements normally not reasonably available to the public, and also provide an official copy of the communication to SBC.

Nonetheless, since this is your information—which we believe we merely possess and do not control—in the interest of complete disclosure we do provide the following information:

Case Docket 29415, CARY FITCH d/b/a FITCH AFFORDABLE TELECOM PETITION FOR ARBITRATION AGAINST SBC TEXAS UNDER § 252 OF THE COMMUNICATIONS ACT.

[contact information for arbitrators, including phone numbers and email addresses]

[contact information for Commissioners, including phone numbers and email addresses]

If you **do** contact the PUC then please be sure to mention the Docket number so they will know what case you are discussing.  If you wish to formally intervene in the case to protect your privacy, then seek input from the Commission on how to do so.  Even though this issue directly involves your personal and private information—which in our opinion you, and not we, control—we cannot provide you legal advice about how to protect your privacy and property.

It is undisputed that McCollough, alone, drafted the Privacy Statement.

Subsequent to the posting of the Privacy Statement, SBC filed a motion for sanctions against Affordable and its attorneys (appellants) with the arbitration tribunal.

4

SBC alleged that Affordable and appellants: (1) solicited ex parte communications intended to improperly influence the arbitrators through the Privacy Statement posted on Affordable's website; (2) made false and misleading representations in the Privacy Statement; and (3) otherwise violated standards of conduct related to dignity, courtesy, and respect for persons participating in the proceedings. After a hearing on the motion for sanctions, the arbitrators issued an order imposing sanctions on McCollough for soliciting ex parte communications, making false and misleading statements to Affordable's customers, and engaging in abusive conduct by sending an email to counsel for SBC that violated the Commission's standards of conduct.[5] The order required McCollough to pay SBC's expenses related to his misconduct and excluded McCollough from further participation in the arbitration. The order expressly declined to impose sanctions against Bolduc and Affordable because the arbitrators found insufficient evidence of their involvement with the Privacy Statement or McCollough's misconduct.

Affordable and appellants appealed the arbitrators' sanctions order to the Commission. The Commission heard oral argument on the appeal and issued an order denying Bolduc's appeal and granting in part and denying in part the appeals of McCollough and Affordable. In its order on appeal, the Commission upheld the portion of the sanctions order finding that McCollough had solicited ex parte communications but declined to find that the false and misleading statements made by McCollough in the Privacy Statement were a separate sanctionable action. The order on appeal reversed the

---

[5] The order also noted McCollough's continuing misconduct throughout the proceedings, including combative and inflammatory statements made by McCollough in Affordable's petition, despite explicit warnings and admonitions by the arbitrators to all parties during the proceedings.

portion of the order finding that McCollough's email was sanctionable conduct. The Commission concluded that the sanctions order properly required McCollough to pay SBC's expenses but reversed the portion of the order excluding McCollough from participation in the arbitration.

McCollough then sued the PUC in state district court, seeking reversal of the Commission's sanctions orders and/or declaratory relief that the Commission lacked the authority to sanction McCollough and declaratory relief that the Commission violated McCollough's constitutional rights; Bolduc intervened in the lawsuit. In response, the PUC filed two pleas to the jurisdiction, one disputing Bolduc's right to appeal the sanctions orders and another contending that McCollough's claims for declaratory relief were redundant of his other claims.

Meanwhile, McCollough filed a lawsuit on behalf of Affordable challenging both the sanctions orders and the order on the merits of interconnection arbitration. Because it challenged the merits in addition to the sanctions, Affordable's suit was removed to federal court. *See* 47 U.S.C. § 252(e)(6) (2006). Affordable filed an amended complaint in federal court, which expressly addressed the sanctions orders. The portion of Affordable's federal complaint regarding the sanctions orders was almost identical to McCollough's state court petition. After the federal complaint was filed, the sanctions issue was also fully briefed to the federal court. McCollough signed both the petition and the briefing. The federal court retained all issues, including the challenge to the sanctions orders.

After a hearing at which McCollough argued against the sanctions orders, the federal court issued an order affirming the Commission's decision in Affordable's case in all respects and dismissing Affordable's claims against the PUC with prejudice. The order

6

addressed the sanctions issue, concluding that Affordable's argument that the Commission was without authority to issue sanctions was meritless. Specifically, the order stated that the Commission "did not exceed its authority as a quasi-judicial body when it imposed sanctions on [Affordable]'s counsel . . . ." The order also rejected the constitutional challenges—free speech and right to seek redress of grievances—to the sanctions orders.

Affordable appealed the court's order to the Fifth Circuit. However, its appeal did not address the sanctions issue; it complained of neither the jurisdiction of the federal court to hear the sanctions issue nor the ruling of the court affirming the Commission's decision in the case. The appeal only complained of the court's ruling on the merits order regarding the interconnection agreement.

Subsequent to the federal court's order, the state district court issued a scheduling order in McCollough's lawsuit, setting the case for trial. The PUC then filed a motion to dismiss McCollough's state case on the grounds that the federal court's decision regarding the sanctions orders collaterally estopped McCollough's state court lawsuit. After a hearing, the state court issued a final judgment, in which it: (1) granted the PUC's plea to the jurisdiction regarding McCollough's claims for declaratory relief and dismissed those claims; (2) granted the PUC's plea to the jurisdiction regarding Bolduc's right to appeal the sanctions order and dismissed Bolduc from the case; (3) granted the PUC's motion to dismiss McCollough's suit on the basis of collateral estoppel; and (4) "[a]lternatively," affirmed the Commission's sanctions orders on the merits. The final judgment ordered that McCollough and Bolduc were "DENIED all relief sought by their suit" and "finally disposed of all parties and claims." (emphasis in original). This appeal ensued.

7

## II. DISCUSSION

By four issues, appellants contest the trial court's judgment. First, appellants argue that the trial court erred in concluding that Bolduc has no standing to appeal the Commission's sanctions order. Second, appellants contend that the trial court erred in applying the doctrine of collateral estoppel to bar appellants' challenge to the sanctions order on the basis of a federal lawsuit to which they were not parties. Third, appellants argue that the trial court erred in affirming the Commission's sanctions order on the merits. Finally, appellants challenge the trial court's dismissal of appellants' claims for declaratory relief regarding the regulatory procedures and constitutional implications that should have governed the PUC's telecommunications arbitration procedures.

### A. The Court's Jurisdiction Over Bolduc

First, appellants complain that the trial court erred in granting the PUC's plea to the jurisdiction, which dismissed Bolduc from the case on the grounds that he had no standing to appeal from a sanctions order that did not assess sanctions against him.[6]

### 1. Standard of Review and Applicable Law

"A plea to the jurisdiction challenges the trial court's authority to consider the subject matter of a claim." *Tex. Dep't of Transp. v. Garcia*, 243 S.W.3d 759, 761 (Tex. App.–Corpus Christi 2007, pet. filed) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). Whether a court has subject matter jurisdiction is a question of law and is subject to de novo review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217,

---

[6] Although appellants characterize this argument as an issue of standing, whether or not Bolduc was an aggrieved party who was entitled to appeal the sanctions order is a question of justiciable interest. *See County of El Paso v. Ortega*, 847 S.W.2d 436, 441-42 (Tex. App.–El Paso 1993, no writ).

8

226 (Tex. 2004).  When reviewing a trial court's ruling on a plea to the jurisdiction, we will consider the plaintiff's pleadings and factual assertions and the evidence submitted by the parties relevant to the jurisdictional issue.  *Garcia*, 243 S.W.3d at 761.

"It is a fundamental principle of appellate review that a party on appeal may not complain of errors that do not injuriously affect him . . . ."  *County of El Paso v. Ortega*, 847 S.W.2d 436, 441 (Tex. App.–El Paso 1993, no writ) (citing *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex. 1982)).  Only an aggrieved party may appeal the trial court's judgment; "an aggrieved party is one who has an interest recognized by law" that was adversely affected by the judgment.  *Id*. at 442 (citing *S. Nat'l Bank of Houston v. City of Austin*, 582 S.W.2d 229, 235 (Tex. Civ. App.–Tyler 1979, writ ref'd n.r.e.)).  Moreover, a party generally "appeals from a judgment and not from a finding or conclusion in support of the judgment."  *Champlin Exploration, Inc. v. R.R. Comm'n of Tex.*, 627 S.W.2d 250, 251 (Tex. App.–Austin 1982, writ ref'd n.r.e.); *C.O.N.T.R.O.L. v. Sentry Envtl., L.P.*, 916 S.W.2d 677, 679 (Tex. App.–Austin 1996, writ denied).  If a party prevailed at the lower level, he may not appeal the judgment merely for purpose of striking findings and conclusions with which he does not agree.  *Champlin*, 627 S.W.2d at 251; *see State v. Leutwyler*, 979 S.W.2d 81, 83 n.2 (Tex. App.–Austin 1998, no pet.) (reasoning that an order not adverse to a particular party would not be appealable by that party).

2.  Analysis

Appellants contend that, even though the Commission's order did not impose sanctions against Bolduc, the language of the sanctions order raises doubts about Bolduc's

ethics and judgment that damage his reputation as a lawyer. The sanctions order issued by the arbitrators reads in relevant part:

> This order does not impose sanctions on David Bolduc . . . . The Arbitrators do not find sufficient evidence to support sanctions against Bolduc. Testimony at the hearing on the motion for sanctions indicated that Bolduc only had a marginal role in the development of [Affordable]'s Emergency Appeal. Bolduc testified that he had essentially "cut and pasted" the Emergency Appeal together from prior pleadings drafted by McCollough after a cursory review of those prior pleadings. Furthermore, McCollough and not Bolduc apparently drafted the Privacy Statement. The contents of [Affordable]'s pleadings and the Privacy Statement reflect McCollough's work rather than Bolduc's since Bolduc had "cut and pasted" McCollough's prior pleadings to create the Emergency Appeal.

(internal citations omitted). McCollough and Bolduc appealed the arbitrators' order to the Commission, which issued an order on appeal that reads in relevant part:

> [T]he Commission upholds the portion of [the sanctions order] that found insufficient evidence to support sanctions against Bolduc. . . . The Commission agrees with the Arbitrators that there was not sufficient evidence to support sanctions against Bolduc, but also agrees that there was at least a scintilla of evidence of sanctionable conduct . . . . The Commission finds that there is at least some evidence of Bolduc's involvement in the solicitation of ex parte communications via the Privacy Statement. Bolduc was responsible for sending an e-mail to Arbitrators and other parties with a hyperlink to the webpage that contained the Privacy Statement. The Commission finds that Bolduc should have more thoroughly vetted the privacy notice, of which he had knowledge, and as an attorney objected to its form or content. The Commission further agrees with the Arbitrators that the contents of Affordable Telecom's pleadings and the Privacy Statement reflected McCollough's work rather than Bolduc's. Therefore, the Commission finds that the Arbitrators were correct in their review of the evidence in the record, and that Bolduc should not be subject to sanctions as a result of his involvement in the filing of Affordable Telecom's Emergency Appeal.

Appellants complain that the Commission tarnished Bolduc's reputation by finding that: there was "at least a scintilla of evidence of sanctionable conduct;" there was "at least some evidence of Bolduc's involvement in the solicitation of ex parte communications;" and

10

that "as an attorney," Bolduc should have objected to the "form or content" of the Privacy Statement.[7]  We disagree.

Read in context, the phrases lifted by appellants from the order do not adversely affect Bolduc's interests.  *See Ortega*, 847 S.W.2d at 442.  Rather, the observations that there was "at least a scintilla" or "some evidence" of Bolduc's involvement are merely the findings of the Commission made as a part of their ultimate determination that there was insufficient evidence to support sanctions against Bolduc.  When the Commission declined to assess sanctions, Bolduc became a prevailing party, and he cannot now contest the Commission's findings and conclusions with which he disagrees.  *See Champlin*, 627 S.W.2d at 251.  We decline today to conclude that the mild phrasing used by the Commission was sufficiently harsh to vest in Bolduc a right to appeal an order that failed to impose the sanctions sought by the adverse party, i.e. an order in which Bolduc prevailed.  *See Ortega*, 847 S.W.2d at 442;  *C.O.N.T.R.O.L.*, 916 S.W.2d at 679 (holding that a party generally appeals from a judgment and not merely the findings and conclusions of the court).  Instead, we conclude that Bolduc was not an aggrieved party because he had no interest adversely affected by the Commission's order, and therefore, the trial court

---

[7] As support for this argument, appellants direct us to a line of federal cases standing for the general proposition that a court's reprimand of an attorney, short of monetary sanctions, could be sufficient to create a right to appeal.  *See, e.g.*, *Walker v. City of Mesquite*, 129 F.3d 831, 832-33 (5th Cir. 1997) (holding that an attorney had a right to appeal where the district court sternly reprimanded him on the record and found him guilty of blatant misconduct); *Sullivan v. Comm. on Admissions & Grievances of the U.S. Dist. Ct. for the Dist. of Columbia*, 395 F.2d 954, (D.C. Cir. 1967) (concluding that an attorney had standing to appeal where the district court determined the attorney was guilty of proscribed conduct and admonished him in a memorandum opinion).  We must note at the outset that these cases are not binding on this Court.  And even if they were, the cases are entirely distinguishable from this appeal. Here, Bolduc was never reprimanded by the arbitrators or the Commission.  The findings made in the arbitrators' sanctions order and the Commission's order on appeal do not rise to the level of the serious, formal reprimands and admonishments delivered by the federal courts in the cited line of cases.  We, therefore, do not find appellants' authority to be persuasive in our determination of their first issue.

11

did not err in granting the PUC's plea to the jurisdiction and dismissing Bolduc from the case. *See Ortega*, 847 S.W.2d at 442. Appellants' first issue is overruled.

## B. Collateral Estoppel

In its second issue, appellants contend that the trial court erred in granting the PUC's motion to dismiss appellants' claims on the basis of collateral estoppel. The doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating a particular issue that the party already litigated and lost in an earlier suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). Collateral estoppel is an affirmative defense, and to prove it, a party must establish that: (1) the same issues sought to be litigated in the second suit were fully litigated in the first suit; (2) those issues were essential to the judgment in the first suit; and (3) the parties were cast as adversaries in the first suit. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

### 1. Fully and Fairly Litigated

To meet the first prong, the particular issue in the current case must have been actually litigated in the earlier proceeding, which means that the issue was raised by the pleadings or otherwise submitted for determination and was determined by the fact finder. *Rexrode v. Bazar*, 937 S.W.2d 614, 617 (Tex. App.–Amarillo 1997, no writ) (citing *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985)). The issue decided in the first suit must be identical to the issue in the pending suit and must have been fully and fairly litigated in the first suit. *Miller*, 52 S.W.3d at 696.

Here, McCollough's state court petition raised the following issues: whether the PUC had authority to issue sanctions in the context of a telecommunications arbitration; whether there was sufficient evidence of McCollough's intent to solicit ex parte communications; whether there was sufficient evidence that the Privacy Statement was intended to be false and misleading; whether the Privacy Statement was protected speech; whether the sanctions order complied with contested case procedures; whether the sanctions order violated Commission rules and due process; and whether the sanctions order complied with general procedural requirements applicable to sanctions orders.[8] In its motion to dismiss, the PUC presented evidence that the issues raised in Affordable's federal complaint were virtually identical to McCollough's issues in this case.[9] Moreover, there is evidence in the record that the sanctions issue was fully briefed and argued by McCollough in a hearing before the federal court. The order of the federal court specifically addressed the sanctions orders and then affirmed the decisions of the Commission in their entirety. Although Affordable challenged the court's decision on the merits of the arbitration in an appeal to the Fifth Circuit, it failed to contest the order with regard to the sanctions issue. We conclude that—because the issues raised by McCollough in his state case were raised by the pleadings in the federal case and because the issues were fully briefed and argued before and determined by the federal court—McCollough's state court

[8] McCollough's state court petition also raised the issue of whether the sanctions order complied with the Texas Open Meetings Act. However, McCollough does not advance this argument on appeal.

[9] The issues argued in Affordable's federal complaint are as follows: that the PUC erred in not following contested case procedures; that the PUC had no authority to sanction non-public utility parties or attorneys who represent those parties; that the sanctions order had no basis in law or fact, i.e. that there was no evidence of any intent to solicit ex parte communications or make false and misleading statements; that the sanctions order violated free speech rights; that the sanctions order violated the right to petition the government for redress of grievances, i.e. due process rights; and that the PUC did not comply with general procedural requirements applicable to sanctions orders.

issues regarding the sanctions orders, identical to the issues disposed of by the federal court, were actually litigated in an earlier proceeding, and the PUC, therefore, satisfied its burden of proof on the first prong. *See Rexrode*, 937 S.W.2d at 617; *Miller*, 52 S.W.3d at 696.

### 2. Essential to the Prior Judgment

To meet the second prong of the collateral estoppel test, the PUC must prove that the issues litigated in the earlier case, identical to the issues in the pending case, were essential to the prior judgment. *Eagle Prop., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721-22 (Tex. 1990). "'If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.'" *Id*. at 722 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. i (1982)). In other words, if the judgment from the earlier proceeding includes alternative holdings, each of which could independently support the outcome of the prior case, one of those holdings, if raised in a subsequent law suit, would not have a preclusive effect on the pending case. *See id*.

We find no such alternative holdings here. In its motion to dismiss, the PUC offered as evidence the order of the federal court, which affirmed in its entirety the Commission's decision regarding Affordable's arbitration with SBC. The Commission's decision included the disposition of two distinct issues: (1) the Commission's sanctions orders, and (2) the Commission's decision on the merits of SBC and Affordable's interconnection agreement. The evidence showed that both issues were briefed, argued, and decided by the federal court and each was necessary to the court's judgment. The issues were not independent grounds that, standing alone, could have supported the federal judgment; the federal

14

court's resolution of the sanctions issue was not an alternative holding for its decision on the merits issue and vice versa. *See id.* Therefore, we conclude that the issues decided by the federal court regarding the sanctions order were essential to its judgment and that McCollough is precluded from relitigating the same issues in his state court case. *See id.* The second prong has been met.

### 3. Parties Cast as Adversaries

The third and final element of the collateral estoppel affirmative defense requires that the parties to the pending case were cast as adversaries in the first proceeding. *Trapnell*, 890 S.W.2d at 801.

> Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy, and, where not so, that, at the least, the presently asserted interest was actually and adequately represented in the prior trial.

*Scharbauer*, 807 S.W.2d at 721 (quoting *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971)). In other words, collateral estoppel precludes relitigation of a particular issue when the party against whom the doctrine is asserted "had a full and fair opportunity to litigate the issue in the prior suit." *Id.* (quoting *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex. 1988)).

Strict mutuality of parties is not required. *Trapnell*, 890 S.W.2d at 801. Rather, if a person was not a party to the prior action, he is nonetheless bound by the earlier judgment if he is in privity with the party in the prior case. *Benson*, 468 S.W.2d at 363. We have recognized that there is no generally prevailing definition of privity. *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195, 199 (Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e.). "The determination of who are privies requires careful examination into the

15

circumstances of each case." *Benson*, 468 S.W.2d at 363. If a person is not a party but instead controls an earlier action, he is bound by its outcome where he has a proprietary or financial interest in the prior judgment. *Id*. at 363-64. In sum, privity refers to a person who is so connected in law with a party to the prior judgment that the party to the judgment represented the same legal right in which the person had an identical interest. *Id*.

Here, McCollough argues that the PUC cannot establish the third element of its affirmative defense because McCollough's relationship to Affordable as its counsel in the federal court case does not put him in privity with Affordable and, thus, adverse to the PUC. We disagree. The record shows that Affordable's interests in the federal case arose from the same sanctions orders that McCollough now challenges in state court. Although McCollough was not a party to the federal case, he did control the course of the proceedings; the PUC presented evidence in its motion to dismiss that he signed the complaint and briefing and argued the case before the federal court. As previously discussed, the Commission's orders imposed sanctions against McCollough alone. Thus, he had both a proprietary and financial interest in the federal court's judgment on the sanctions orders. *See id*. Moreover, we conclude that McCollough, the party against whom the defense of collateral estoppel is asserted, had a fair opportunity to argue against the sanctions orders in the earlier proceeding. *See Scharbauer*, 807 S.W.2d at 721. We conclude that McCollough's interest in the federal case was identical to Affordable's, and the judgment of the federal court directly affected his legal rights. *See Benson*, 468 S.W.2d at 363. Because McCollough's interests were represented through Affordable, he

was in privity with Affordable and is precluded from relitigating the same issues in this case.  *See id.*

Based on the foregoing, we conclude that the federal court's order regarding the Commission's sanctions orders collaterally estops McCollough's identical claims in this case.  McCollough's second issue is overruled.  In light of our disposition of this issue, we do not reach McCollough's third issue contesting the merits of the sanctions orders.[10]  TEX. R. APP. P. 47.1.

### III.  CONCLUSION

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 20th day of August, 2009.

---

[10]  Moreover, we conclude that appellants' claims for declaratory relief regarding the authority of the Commission to impose sanctions and constitutional violations do not raise any new issues not already addressed by our decision to give collateral estoppel effect to the federal court order, which disposed of the issues for which appellants also seek declaratory relief.  In other words, we need not engage in a second analysis of the same basic issues merely because appellants recast their claims as a request for declaratory judgment.  *See* TEX. R. APP. P. 47.1.  We, therefore, do not reach appellants' fourth issue.  *See id.*