# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00471-CV

**Buddy Gregg Motor Homes, Inc., Appellant**

**v.**

**Marathon Coach, Inc.; Brett Bray; L. David Brunke; and the Motor Vehicle Division
of the Texas Department of Transportation, Appellees**

**DIRECT APPEAL ON REMOVAL FROM THE DISTRICT COURT OF TRAVIS COUNTY
53RD JUDICIAL DISTRICT, NO. D-1-GN-08-002098A**

## O P I N I O N

This appeal presents substantive and procedural issues concerning the "hybrid claims resolution process" for certain civil damages claims relating to the sale of motor vehicles in Texas. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222-26 (Tex. 2002). It arises from proceedings following our decision in *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Board of the Texas Department of Transportation*, 156 S.W.3d 91 (Tex. App.—Austin 2004, pet. denied) (*Buddy Gregg I*). To summarize the proceedings that followed *Buddy Gregg I*, the private parties involved in that appeal—appellant Buddy Gregg Motor Homes, Inc. (Buddy Gregg) and appellee Marathon Coach, Inc. (Marathon)—litigated before appellee the Motor Vehicle Division ("Division") of the Texas Department of Transportation whether the Division[1] order that

---

[1] Actually, our 2004 *Buddy Gregg* decision concerned an order of the former Texas Motor Vehicle Board ("Board"). In 2005, the Board was abolished and its statutory responsibilities and

we had addressed in *Buddy Gregg I* conclusively established (as Buddy Gregg contended) or negated (as Marathon suggested) a violation by Marathon of Texas's prohibition against vertical integration of motor vehicle dealers and manufacturers. The Division issued an order finding and declaring that its earlier order did not have the effect of establishing a violation and that no violation had occurred. Buddy Gregg then sought judicial review of the Division's order in the district court,[2] and Marathon removed the cause to this Court. In three issues, Buddy Gregg argues that the Division's order must be reversed because it is based on legal error, is the product of improper procedure, and is not supported by substantial evidence. We will overrule these contentions and affirm the Division's order.

## BACKGROUND

Before turning to the lengthy history of the dispute underlying this appeal, it is helpful to note three key features of Texas's regulatory regime governing motor vehicle sales, which provide its context. First, the legislature has defined several statutory categories of participants in the Texas motor vehicle sales and distribution market and required each type of participant to

rules were transferred to the Division. Act of May 30, 2005, 79th Leg., R.S., ch. 281, §§ 7.01-.06, 2005 Tex. Gen. Laws 778, 839-40. It was the Division that issued the administrative order on appeal in this cause. Subsequently, the legislature, effective November 1, 2009, transferred the Division's functions to the newly created Texas Department of Motor Vehicles. *See* Act of May 18, 2009, 81st Leg., R.S., ch. 933, § 6.01(a), 2009 Tex. Gen. Laws 2485, 2519. To avoid unnecessary confusion, we will generally use "the Division" to refer to both the Board and the Division.

[2] Buddy Gregg named as defendants the Division; the Division's director, appellee Brett Bray; and the Division's director of consumer affairs, appellee L. David Brunke. As explained below, Bray issued an initial "final order" on behalf of the Division, but later recused on rehearing. Responsibility of rendering the Division's final order was then delegated to Brunke, who adopted Bray's prior findings and decision. We will use "the Division" to refer to these parties except when the distinction is relevant.

2

obtain corresponding licenses from the Division in order to conduct those activities in the state. *See generally* Tex. Occ. Code Ann. § 2301.002 (West Supp. 2009).[3] Among the regulatory and licensing classifications relevant to the underlying dispute are "manufacturers" (persons who manufacture or assemble new motor vehicles), "dealers" (retail sellers of motor vehicles), and "franchised dealers" (dealers with a franchise agreement with a manufacturer of motor vehicles). *See id*. § 2301.002(7), (16), (19).

The second pertinent feature of the regulatory regime is a prohibition against "vertical integration" of motor vehicle "dealers" and "manufacturers." Currently found in section 2301.476(c) of the occupations code, the prohibition, in relevant part, generally bars a motor vehicle "manufacturer" from owning an interest in, operating, or controlling a motor vehicle "dealer" or "dealership" or acting in the capacity of a "dealer." *Id.* § 2301.476(c) (West Supp. 2009).

The third notable feature of the regime relates to the Division's jurisdiction to initially decide certain issues involving the construction or application of the statutes governing motor vehicle sales and distribution. At all relevant times, the legislature has delegated to the Division "the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter [2301 of the occupations code], including

---

[3] When the underlying dispute originated, Texas's statutory regulations of motor vehicle sales were contained in the Texas Motor Vehicle Commission Code, Tex. Rev. Civ. Stat. Ann. art. 4413(36) (West 1976). Effective June 1, 2003, the Code was recodified without substantive change in Chapter 2301 of the occupations code. Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 5, 2001 Tex. Gen. Laws 2570, 4921-68. Because neither party suggests there are any material substantive difference between the Code and the occupations code versions of the provisions applicable to this case, we will cite the occupations code version for convenience. However, we will use "the Code" as shorthand for both the Motor Vehicle Commission Code and chapter 2301 of the occupations code.

3

the original jurisdiction to determine its own jurisdiction." Tex. Occ. Code Ann. § 2301.151(a) (West 2004). In a pair of seminal cases, the Texas Supreme Court addressed the implications of this jurisdictional grant in civil actions that are predicated on construction or application of the Code.

In *Subaru of America, Inc. v. David McDavid Nissan, Inc*., the supreme court held that in suits alleging Code violations as the basis for a cause of action for damages created by the Code itself (what the court termed a "Code-based" claim), the legislature contemplated a "hybrid claims resolution process" whereby a plaintiff must first exhaust his remedies before the Division "to obtain a [Division] decision about Code violations, if any, to support a [Code-based] claim based on Code violations." 84 S.W.3d at 224; *see also id.* at 224-26 (discussing Code-created cause of action under DTPA for certain Code violations and Code-created claim for breach of Code-imposed duty of good faith and fair dealing). Assuming the plaintiff obtains a final Division finding of a Code violation, the supreme court explained, the plaintiff can then seek recovery of damages under his Code-based claim in the trial court, which must treat the Division's findings as "wholly binding." *Id.* at 224-25. The supreme court further held that this "hybrid claims resolution process" is also implicated when a civil claim is predicated on a regulatory decision that the Code delegates to the Division. *See id.* at 226 (dealer's breach-of-oral-contract claim that was "predicated on the assumption that the [Division] would have allowed the [dealership] relocation and granted the license" to the dealer for the new location, a decision that the Code delegated exclusively to the Division); *see also Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (explaining that this holding in *Subaru* "relied on a Code provision mandating that a dealer obtain the [Division's] approval and a license before operating a franchise in a certain area").

4

On the other hand, the supreme court has indicated that not all claims raising some sort of Code-construction issue fall within the Division's exclusive jurisdiction to resolve "those claims and issues the Code governs." *See Butnaru*, 84 S.W.3d at 200, 205-08. In *Butnaru*, after a deal to sell a Ford dealership fell apart over Ford's invocation of a contractual right of first refusal with the dealer, the prospective transferee asserted tortious-interference and declaratory-judgment claims challenging whether the right of first refusal violated the Code so as to be unenforceable. Contrasting the claims at issue in *Subaru*, the supreme court observed that "no Code provision extends the [Division's] exclusive jurisdiction to resolving the Butnarus' tortious interference and declaratory judgment claims," but instead demonstrated the absence of any such jurisdictional grant by "failing to establish any procedure through which the [Division] may resolve a prospective transferee's claim that a manufacturer unlawfully refused to accept a dealer's transfer request" coupled with the Division's inability to award monetary damages. *Id.* at 207-08. The court continued, however, to address whether the claims nonetheless implicated the primary-jurisdiction doctrine, and held that they did. *See id.* at 208-09 (reasoning that the claims "raise a Code construction issue that is within the [Division's] special competence and expertise" and that the State had an interest "in a uniform interpretation of the Code").

With these features of the regulatory regime governing Texas motor vehicle sales as a backdrop, we now turn to the history of the dispute underlying this appeal.

**The First Agency Proceeding and *Buddy Gregg I***

At relevant times, appellee Marathon was in the business of purchasing bus "shells" from Prevost Car, Inc. (Prevost), installing various luxury amenities in the passenger compartment

5

to create what the ALJ termed "the earthbound equivalent of a corporate jet," and selling the finished coaches at retail. *See Buddy Gregg I*, 156 S.W.3d at 94, 96. Marathon desired to open a retail sales and service facility in the Dallas-Fort Worth area and began exploring how it might obtain the licenses necessary to do so. Mindful of Texas's prohibition against vertical integration of motor vehicle manufacturers and dealers, Marathon had a series of contacts with the Division in an effort to persuade the agency that it should not be classified as a "manufacturer" of the luxury coaches it would sell at the facility, but should instead be licensed as a "converter" of Prevost-manufactured motor vehicles. *See* Tex. Occ. Code Ann. § 2301.002(4), (5), (6). These contacts and discussions included Marathon's transport of a finished coach to the Division's headquarters in Austin, where it was inspected by the Division's director and the director of the Division's licensing division. After obtaining an informal opinion from the Division's director of licensing that it was indeed a converter of Prevost-manufactured motor vehicles rather than a manufacturer of the coaches it sold, Marathon applied for and, in January 2002, obtained from the Division licenses to operate as a converter and a franchised dealer of Prevost-manufactured motor vehicles. *See Buddy Gregg I*, 156 S.W.3d at 96. Marathon began operating under converter and franchised dealer licenses at a new Grand Prairie facility in March 2002. *See id.*

Marathon's entry into the market prompted appellant Buddy Gregg, which operates a competing motor home dealership in Lewisville, to file a formal complaint with the Division. Buddy Gregg asserted that the agency had improperly licensed Marathon as a converter and franchised dealer because Marathon should instead be considered a manufacturer of the coaches it sold. Relying on its enforcement powers, the Division docketed the matter as a contested-case

6

hearing and permitted Buddy Gregg to participate in the proceedings (the "First Agency Proceeding"). *See id.* at 97, 101-02. When issuing its notice of hearing, the Division imposed the statutory stay now codified in section 2301.803 of the occupations code. *See* Tex. Occ. Code Ann. § 2301.803 (West 2004).[4]

During the First Agency Proceeding, Marathon and Buddy Gregg filed agreed stipulations that, since March 2002, Marathon had owned an interest in and had been operating and controlling a Texas dealership and had been acting in the capacity of a dealer. Following a contested-case hearing, the ALJ prepared a proposal for decision (PFD) containing findings that since March 2002, Marathon had been licensed and conducted business as a converter and franchised dealer in its Grand Prairie facility and concluding that the Prevost shells delivered to Marathon were "motor vehicles," that "Marathon is not a motor home manufacturer," and that Marathon

---

[4] Section 2301.803 provides:

(a)  On the initiation of a board proceeding, whether by complaint, protest, or otherwise, a person who receives notice from the board of a statutory stay imposed by this chapter may not allow or commit any act or omission that would:

(1)  violate this chapter or any rule, order, or decision of the board;
(2)  affect a legal right, duty, or privilege of any party before the board; or
(3)  tend to render ineffectual a board order in a pending proceeding.

(b)  A statutory stay imposed by this chapter remains in effect until vacated or until the proceeding is concluded by a final order or decision.

(c)  A person affected by a statutory stay imposed by this chapter may initiate a proceeding before the board to modify, vacate, or clarify the extent and application of the statutory stay.

Tex. Occ. Code Ann. § 2301.803 (West 2004).

"has been lawfully licensed" as a motor vehicle converter and franchised dealer. However, in March 2003, the Division (actually, the former Motor Vehicle Board) adopted the ALJ's findings but not his conclusions. The Board, by a single vote, modified the ALJ's proposed conclusion regarding Marathon's status as a manufacturer to state, "Marathon *is* a motor home manufacturer" (emphasis added), and rejected the other proposed conclusions. However, in its final order, the Division did not immediately disturb the status quo or impose any sanctions, but instead gave Marathon "up to 12 months from the date this order is final to restructure its licenses in accordance with the above findings and conclusions."

Both Marathon and Buddy Gregg sought judicial review of the Division's order in the district court, which consolidated the two causes. Buddy Gregg then removed the consolidated case to this Court. On appeal, Marathon challenged the Board's conclusion that it was a "motor home manufacturer" and Buddy Gregg's "standing" with respect to the agency proceeding and subsequent suit for judicial review. Buddy Gregg, on the other hand, urged that the Division had acted outside its authority in giving Marathon twelve months to restructure its licenses. Buddy Gregg further complained that under *Subaru* it was entitled to specific findings by the Division to the effect that Marathon had violated the vertical-integration prohibition as the first step in the "hybrid claims resolution process," to serve as the predicate for Buddy Gregg to pursue a civil damages suit against Marathon. *Id.* at 103-04; *see Subaru*, 84 S.W.3d at 222-26. We overruled all of these contentions and affirmed the Division's order. Central to our disposition of the procedural and jurisdictional issues was our view that the Division proceeding, at bottom, was an exercise of the agency's enforcement powers, an arena in which the legislature had afforded it broad discretion with

8

respect to its procedures for determining licensing questions and its choice of remedies for any licensing errors or violations it found. *See Buddy Gregg I*, 156 S.W.3d at 101-03. With respect to Buddy Gregg's contention that *Subaru* required the Division to make additional fact findings of vertical-integration violations, we concluded that it had failed to preserve the complaint by raising it before the Division. *Id.* at 104.

Both Buddy Gregg and Marathon filed petitions for review with the supreme court, which denied each in December 2005.

**The Second Agency Proceeding and this appeal**

In the meantime, the Division, exercising an explicit grant of authority under the Code, had suspended its enforcement of its First Agency Proceeding order during the pendency of the *Buddy Gregg I* appeals. *See* Tex. Occ. Code Ann. § 2301.755 (West 2004). Once the supreme court denied review and the judgment became final, the twelve-month period that the First Agency Proceeding order gave Marathon to restructure its licenses and operations to comply with the order began to run. There is no dispute that this restructuring period ended on November 30, 2006, by which time Marathon had taken steps to comply with the order, including obtaining a manufacturer's licenses and transferring its dealership to another entity. Those restructuring measures are ultimately not directly at issue in this appeal.

In January 2006, however, Buddy Gregg sued Marathon in Tarrant County district court. It asserted several causes of action, each of which was predicated on an allegation that Marathon had been in continuous violation of the vertical-integration prohibition since it began its Grand Prairie operations in March 2002: (1) a cause of action under section 2301.805 of the

9

occupations code for relief under the DTPA, *see* Tex. Occ. Code Ann. §§ 2301.351, .805 (West 2004) (providing cause of action for relief under DTPA for persons sustaining damages as a result of, inter alia, a dealer's violation of a Division rule); *see also Subaru*, 84 S.W.3d at 225 (discussing this type of "Code-based" claim); (2) common-law causes of action for "unfair competition" and (3) tortious interference with its prospective business relationships; and causes of action for (4) "violation of code" and (5) violation of the statutory stay. Based on these causes of action, Buddy Gregg prayed for actual, additional, and exemplary damages, attorney's fees, and injunctive relief.

In its petition, Buddy Gregg took the position that it had already exhausted, through the First Agency Proceeding, any administrative remedies it was required to pursue before prosecuting its claims in district court. It maintained that the Division's conclusion that "Marathon is a motor home manufacturer," coupled with the Division's rejection of the ALJ's proposed conclusions that Marathon had been "lawfully licensed" and that Prevost bus shells were "motor vehicles" and the unchallenged findings that Marathon had been acting as a dealer, sufficed as a final Division finding that Marathon was in violation of the vertical-integration prohibition and, in turn, had been in violation of the statutory stay while the First Agency Proceeding was pending before the Division. Having obtained this finding of a Code violation, Buddy Gregg reasoned, it could proceed with the second phase of the "hybrid claims resolution process" in district court and recover damages resulting from Marathon's violations.

Marathon responded with a plea to the jurisdiction. It asserted that the Division had exclusive jurisdiction to determine whether, as Buddy Gregg had asserted, it had violated the

10

Code or the statutory stay. Marathon further argued that, contrary to Buddy Gregg's contentions, the Division had not made any findings or conclusions in the First Agency Proceeding that Marathon had committed the Code violations that were the predicate for Buddy Gregg's claims. Consequently, Marathon urged, the Tarrant County district court lacked subject-matter jurisdiction over Buddy Gregg's claims and was required to dismiss them.

While its plea was pending, on March 3, 2006, Marathon filed in the Division a "notice of protest and request for declaratory relief" (the "Second Agency Proceeding"). Marathon sought declarations from the Division's Director (appellee Bray)[5] that (1) the Division "did not make or enter any findings that Marathon violated the Code, any statutory stay, or any [Division] rule" in the First Agency Proceeding; (2) that Marathon "has not violated the Code, any statutory stay, or any Board or Division rule, including but not limited to, because Marathon is not a motor home manufacturer and holds valid licenses and, alternatively, because the period of time for Marathon to restructure its licenses has not expired"; and (3) in the further alternative, "that Marathon did not knowingly or intentionally commit any violations, and did not act with malice, gross negligence, or in any unconscionable manner."

After initiating the Second Agency Proceeding, Marathon amended its plea to the jurisdiction to request, as an alternative to dismissal, abatement pending the Division's resolution of the Second Agency Proceeding. The Tarrant County district court granted Marathon's plea and abated the case pending its further orders.

---

[5] The Director has been delegated statutory authority to issue a declaratory decision and order on behalf of the Division. *See* Tex. Occ. Code Ann. § 2301.101(a) (West Supp. 2009), § 2301.153(a)(8) (West 2004).

Thereafter, on April 28, 2006, Buddy Gregg filed an answer to Marathon's claims in the Second Agency Proceeding. In addition to a general denial of the allegations in Marathon's pleading, Buddy Gregg asserted affirmative defenses that the Division's order in the First Agency Proceeding gave rise to res judicata and collateral estoppel barring Marathon's claims. Buddy Gregg also asserted a counterclaim for declaratory relief as "a predicate to [its] common law and statutory causes of action for damages against Marathon." Specifically, Buddy Gregg requested declarations that Marathon was a mobile home manufacturer that had continuously violated the vertical-integration prohibition since March 2002 and had continuously violated the statutory stay during the pendency of the First Agency Proceeding and thereafter. Relatedly, Buddy Gregg sought additional declarations that Marathon had been in continuous violation of the Code's licensing requirements and the statutory stay because it was not properly licensed to act as a dealer for the make and model of "motor vehicle" it was retailing (i.e., it was licensed to act as a dealer for Prevost-make buses rather than "Marathon-make motor homes").

Buddy Gregg further requested declarations that Prevost and a wholly-owned subsidiary, Prevost Car (U.S.), Inc. (Prevost U.S.), had been continuously acting directly or indirectly as a dealer in Texas without obtaining the required license and that Marathon had aided and abetted these alleged violations. *See* Tex. Occ. Code Ann. §§ 2301.351, .805 (Code-based claim for DTPA relief can be based on one's aiding and abetting of another person's violation of the Code). Finally, Buddy Gregg requested declarations that "[n]either the [Division] nor the Director had or has statutory authority . . . to authorize or to license persons to violate the [Code] or to immunize violators from legal or judicial consequences of their acts" or so authorized, licensed, or immunized

12

Marathon.  Buddy Gregg also asserted a "cross-claim" against both Prevost and Prevost U.S. seeking declaratory relief "as a predicate to [Buddy Gregg's] common law and statutory causes of action for damages" against those entities.

The competing claims were assigned to a Division ALJ—the Honorable Terry J. Johnson, the same ALJ who had presided in the First Agency Proceeding.  Judge Johnson ordered a pre-hearing conference to address, among other issues, whether there were any material facts in dispute; the extent to which the issues were affected by this Court's decision in *Buddy Gregg I*; whether Marathon had been in continuous violation of the Code since March 2002; whether the Division's order in the First Agency Proceeding had "immunized Marathon against violations of the Code or ha[d] otherwise nullified portions of the Code in favor of Marathon"; whether or how the statutory stay effectively "suspended" Marathon's licenses, as Buddy Gregg had suggested; and whether Buddy Gregg's allegations regarding Prevost were properly the subject of a separate complaint.  Following the conference, the ALJ advised the parties that, in his view, the underlying facts relevant to the case were "beyond credible dispute" and that, without hearing further evidence, he would be issuing a proposal for decision (PFD) to the Director within 60 days.  The ALJ further indicated his views on the merits, including that "Marathon is not now, and has not been, operating in violation of law."  The ALJ added that, "as I advised counsel at hearing, Buddy Gregg's cross-claim/counter-claim relating to Prevost are beyond the scope and notice of this case" and should be pursued in a separate action.

In response, Buddy Gregg made several filings demanding an evidentiary hearing and discovery, urging that material fact issues were in dispute, and accusing the ALJ of

13

"prejudgment" of the case. The ALJ responded with a letter emphasizing that no further hearings would be conducted and denying the discovery Buddy Gregg had requested. Thereafter, Buddy Gregg made additional filings that included a second round of discovery requests and motions to compel responses. Buddy Gregg also filed a motion to disqualify and remove the ALJ on grounds that he "prejudged" the case and improperly "refused" to conduct an evidentiary hearing or allow discovery. After receiving briefing from the parties and the ALJ, the Director denied the disqualification motion.

After its disqualification motion was denied, Buddy Gregg filed an amended answer and counterclaim in the Division adding allegations and claims relating to Marathon's efforts to restructure its operations and licenses against both Marathon and various third parties. These third parties included CEMTSM, Inc., an entity to which Marathon was allegedly transferring its dealership. Buddy Gregg's allegations were to the effect that Marathon's restructuring was a "sham" and that Marathon, who would be licensed as a manufacturer, would retain direct or indirect control over the dealership—an allegation that Marathon insisted was solely for purposes of harassment and delay. With this, Buddy Gregg re-urged its disqualification motion, arguing that its new allegations necessitated additional discovery concerning these "newly-discovered facts" that the ALJ was already bent on denying. Buddy Gregg also moved to stay the administrative proceedings to afford it time to request the Tarrant County district court to clarify the questions that the Division was to decide. The Director referred Buddy Gregg's new allegations regarding Marathon's restructuring to Division's director of licensing, but stood by his prior interim ruling denying Buddy Gregg's motion to disqualify the ALJ, observing that the ALJ would have the opportunity to assess

14

whether Buddy Gregg's new pleadings necessitated additional discovery. Finally, as for Buddy Gregg's motion to stay the administrative proceedings pending further direction from the Tarrant County district court, the Director also referred the matter to the ALJ, directing him "to determine if it is now clear that this is a 'McButnaru'[6] proceeding and, if it is, whether to impose a stay while [Buddy Gregg] approaches the Tarrant County District Court or if he has sufficient information to proceed in the manner he deems appropriate."

In response to the Director's letter ruling, the ALJ ruled that in light of the Director's referral of Buddy Gregg's new allegations to the Division's licensing section, it would be "premature and duplicative" to address these allegation in a contested-case hearing and that the allegations were, in any event, "independent of the issues raised by the dispute at hand." The ALJ further determined that "it is clear that the Tarrant County lawsuit has been abated for the purpose of having the Motor Vehicle Division determine whether Marathon has violated the laws administered by this agency" and, accordingly, denied Buddy Gregg's motion to stay the administrative proceedings.

On December 28, 2006, the ALJ issued his PFD recommending that the Director declare that Marathon had not been violating the Code by operating under its converter and dealer's licenses. In support of this recommendation, the ALJ proposed fact findings (some of which were actually conclusions of law) regarding the history of the First Agency Proceeding, *Buddy Gregg I*, and the implications of those prior proceedings. Among the findings material to our analysis are:

---

**6** An apparent reference to *Subaru v. David <u>Mc</u>David Nissan, Inc*. and/or *Butnaru*.

15

6. In January 2002, Marathon was licensed by the Motor Vehicle Division as a converter and franchised dealer of Prevost coaches . . . .

7. Marathon has conducted business as a converter and franchise[d] dealer of Prevost coaches since March 2002. . . .

. . . .

12. The Board [in the First Proceeding] did not find or conclude, and adopted no finding or conclusion, that Marathon violated any statutory stay, any other law or any Motor Vehicle Division rule. . . .

13. The Board suspended enforcement of the order [for] 12 months to allow Marathon time to restructure its licenses. . . .

. . . .

15. Enforcement of the order was suspended pending final determination of the [*Buddy Gregg I*] appeal; the suspension ultimately terminated on November 30, 2006.

. . . .

21. The determination of whether Marathon has committed a violation of Tex. Occ. Code Ann. § 2301.803 (Statutory Stay) is a matter within the exclusive original jurisdiction of the Motor Vehicle Division. . . . .

22. The determination of whether Marathon has committed a violation of the Tex. Occ. Code Ann. § 2301.476 (Manufacturer or Distributor Ownership, Operation or Control of Dealership) is a matter within the exclusive original jurisdiction of the Motor Vehicle Division. . . .

23. Marathon held, and was operating lawfully under, valid licenses issued by the Motor Vehicle Division when Buddy Gregg filed its complaint in [the First Agency Proceeding].

24. Marathon did not violate Tex. Occ. Code Ann. § 2301.803 (Statutory Stay) by operating under its licenses during the pendency of [the First Agency Proceeding].

25. Marathon did not violate any provision of Tex. Occ. Code Ann. § 2301.476 (Manufacturer or Distributor Ownership, Operation or Control of Dealership)

16

by operating under its licenses during the pendency of [the First Agency Proceeding].

26. Marathon did not violate any other statute or rule within the jurisdiction of the Motor Vehicle Division by operating under its licenses during the pendency of [the First Agency Proceeding].

27. The Board had full statutory authority to suspend enforcement of its order in [the First Agency Proceeding] pending final determination of the appeal. (Tex. Occ. Code Ann. § 2301.755(2)).

28. The Board lawfully suspended enforcement of its order in [the First Agency Proceeding] pending final determination of the appeal [i.e., *Buddy Gregg I*].

29. Marathon did not violate Tex. Occ. Code Ann. § 2301.803 (Statutory Stay) by operating under its licenses pending final determination of the appeal in [the First Agency Proceeding; i.e., *Buddy Gregg I*].

30. Marathon did not violate any provision of Tex. Occ. Code Ann. § 2301.476 (Manufacturer or Distributor Ownership, Operation or Control of Dealership) by operating under its licenses pending final determination of the appeal in [the First Agency Proceeding; i.e., *Buddy Gregg I*].

31. Marathon did not violate any other statute or rule within the jurisdiction of the Motor Vehicle Division by operating under its licenses pending final determination of the appeal in [the First Agency Proceeding; i.e., *Buddy Gregg I*].

32. Marathon obtained its licenses after good faith full disclosure of its operations to the Motor Vehicle Division.

After hearing oral argument, the Director issued a "final order" in July 2007 in which he largely adopted the ALJ proposed findings, although he amended finding of fact 12 to state that "[t]e Board did not *expressly* find or conclude, and adopted no finding or conclusion, that Marathon violated any statutory stay, any other law or any Motor Vehicle Division rule." (Emphasis added.) The Director also added a declaration that paralleled the amended finding of fact 12: "That the

17

Motor Vehicle Board did not expressly find or conclude, and adopted no finding or conclusion, that Marathon violated any statutory stay, any other law, or any Motor Vehicle Division rule in [the First Agency Proceeding]." Buddy Gregg filed a motion for rehearing arguing in part that Director was biased due to his involvement in the First Agency Proceeding. "So as to simplify the ultimate appeal and eliminate extraneous issues," the Director granted the motion and delegated his decision-making authority to L. David Brunke, the Division's director of consumer affairs.

Brunke determined no further evidentiary hearings were required because there were "no disputed facts regarding what must be determined," only questions of law. Brunke issued a final order on behalf of the Division in April 2008 in which he adopted the Director's July 2007 order and declaration.[7] Buddy Gregg sought judicial review of this final order in Travis County district court.[8] Marathon removed the cause to this Court.[9]

## ANALYSIS

Buddy Gregg brings three issues on appeal. In its first issue, Buddy Gregg asserts that the Division erred as a matter of law in finding and declaring that Marathon had not violated the Code's vertical-integration prohibition "when the findings and conclusions from the [First Agency

---

[7] On the same day, appellees emphasize, Buddy Gregg sued Marathon, Bray, Brunke, the ALJ, and CEMTSM in the U.S. District Court for the Northern District of Texas. The court ultimately dismissed and abstained. Appellee emphasize this suit, along with Buddy Gregg's history in Texas state court and the Division, as examples of what they perceive as litigiousness. In response, Buddy Gregg makes no apologies for its zealousness in combating what it portrays as illegal vertically integrated operations by a rival business.

[8] *See* Tex. Occ. Code Ann. § 2301.751(a) (West 2004).

[9] *See id.* § 2301.751(b).

18

Proceeding], which were binding on the Division, conclusively established the violation" and relied on factors—"the purported 'validity' of Marathon's licenses, the Board's choice of remedy in the earlier proceeding, and Marathon's alleged 'good faith' in obtaining its licenses"—that were "legally irrelevant." In its second issue, Buddy Gregg complains that the Division committed reversible error in denying it discovery and an evidentiary hearing before issuing its final order. In its third issue, Buddy Gregg urges that certain of the Division's findings and the Division's rejection of its counterclaims were not supported by substantial evidence.

**Standard of review**

The legislature has provided for judicial review of the Division's order under the APA's substantial-evidence standard. Tex. Occ. Code Ann. § 2301.751(a) (West 2004). Under this standard, we may not substitute our judgment for that of the Division on the weight of the evidence on questions committed to its discretion. Tex. Gov't Code Ann. § 2001.174 (West 2008). However, we must reverse and remand the Division's order if Buddy Gregg's substantial rights have been prejudiced because the Division's findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed the Division's statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Id.* § 2001.174(2). In sum, we review the fact findings for support by substantial evidence, review legal conclusions for errors of law, and the proper test is whether the evidence in its entirety is such that reasonable minds could have reached the conclusion that the agency must have

19

reached to justify its decision or whether the agency acted arbitrarily and without regard to the facts. *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied).

To the extent this analysis turns on construction of the occupations code, it presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id*. We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). However, with regard to a statute that an agency is charged with enforcing, we give "serious consideration" to the agency's construction of it, so long as that construction is reasonable and consistent with the statutory language. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).

With respect to the evidentiary support for the Division's order, substantial evidence does not mean "a large or considerable amount of evidence"; rather, substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' of fact." *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) and *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The evidence in the record may preponderate against the agency's decision and still provide a reasonable basis for the decision to satisfy the substantial-evidence

20

standard. *Id*. (citing *Nucor Steel v. Public Util. Comm'n*, 168 S.W.3d 260, 267 (Tex. App.—Austin 2005, no pet.)). The fact-finder determines the credibility of witnesses and the weight to give their testimony. *See Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.). We may not set aside the ALJ's decision merely because testimony was conflicting or disputed, or because it did not compel the decision. *Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 510 (Tex. App.—Austin 2007, no pet.) (citing *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1996)). Ultimately we are concerned not with the correctness of the ALJ's order, but with its reasonableness. *Id*.

Whether the ALJ's order is supported by substantial evidence is a question of law. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000).

**Jurisdictional and procedural posture**

Reflected in the parties' arguments concerning the issues Buddy Gregg raises are disputes regarding the nature of the Division's jurisdiction and role in the Second Agency Proceeding.[10] As these questions logically precede our analysis of Buddy Gregg's issues and provide their jurisdictional and procedural context, we should begin by addressing them.

Consideration of the Division's jurisdiction and role in the Second Agency Proceeding starts with the fundamental principle that administrative agencies "may exercise only

---

[10] This is not the first time that such questions have arisen in the aftermath of *Subaru* and *Butnaru*. *See Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 148 (Tex. App.—Austin 2005, no pet.) ("Exactly what type of procedure the Texas Supreme Court contemplated in *Butnaru* and *Subaru* . . . remains somewhat unclear.").

21

those powers the law, in clear and express statutory language, confers upon them." *Subaru*, 84 S.W.3d at 220. "Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Id.* The courts are not divested by an agency of the subject-matter jurisdiction they would otherwise possess to adjudicate a dispute unless the legislature has granted the agency exclusive jurisdiction, or the sole power to make the initial determination in the dispute. *Id*. at 221.

As previously mentioned, the legislature has delegated to the Division "the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by [the Code]." Tex. Occ. Code Ann. § 2301.151(a). This jurisdictional grant to the Division includes "the original jurisdiction to determine its own jurisdiction." *Id.* With respect to civil claims for damages that are predicated on Code-construction or application issues, the Texas Supreme Court, as noted, has held that the Division's exclusive jurisdiction is implicated in two basic instances: (1) when a plaintiff asserts a "Code-based claim"—i.e., a cause of action based on a Code violation that is created by the Code itself, *see Subaru*, 84 S.W.3d at 224-25; and (2) a claim is predicated on the outcome of a regulatory decision that the Code delegates to the Division. *See id.* at 226. In addition, other Code-related issues raised by civil claims may require judicial abstention and deference under the doctrine of primary jurisdiction. *See Butnaru*, 84 S.W.3d at 205-08. In the Second Agency Proceeding, the Division found that "[t]he determination of whether Marathon has committed a violation" of the vertical-integration prohibition or statutory stay "is a matter within the exclusive original jurisdiction of the Motor Vehicle Division." This determination,

22

like others contained in the Division's final order, is subject to review under the substantial-evidence standard. *See* Tex. Occ. Code Ann. § 2301.751(a), (c).

On appeal, retreating somewhat from its position in its Tarrant County district court petition, Buddy Gregg questions whether its claims (all of which are predicated on the allegation that Marathon violated the vertical-integration prohibition) implicate the Division's exclusive jurisdiction as opposed to its primary jurisdiction. We conclude, for at least two reasons, that the Division did not err in determining that it possessed exclusive jurisdiction to determine whether Marathon had violated the vertical-integration prohibition. First, Buddy Gregg purports to assert at least one "Code-based claim" predicated on Marathon's alleged violation of the vertical-integration prohibition—a cause of action for DTPA relief under occupations code section 2301.805. *See* Tex. Occ. Code Ann. § 2301.805; *see also Subaru*, 84 S.W.3d at 224-26 (terming this cause of action a "Code-based claim").[11] Consequently, Buddy Gregg was required to "obtain a [Division] decision

---

[11] Marathon questions the ultimate viability of this cause of action. Section 2301.805 creates a cause of action for DTPA relief for (1) a "person" who "has sustained damages as a result of a violation of Sections 2301.351-2301.354 or Section 2301.357," or (2) "a franchised dealer who has sustained damages as a result of a violation of: (A) Sections 2301.451-2301.474; or (B) [the DTPA]." Tex. Occ. Code Ann. § 2301.805 (West 2004). As Marathon observes, these cross-references do not include the statutory vertical-integration prohibition, which is found in section 2301.476(c) of the occupations code. *See id.* § 2301.476(c) (West Supp. 2009). In asserting its claim under section 2301.805, Buddy Gregg appears to presume that Marathon's alleged vertical integration would constitute the violation of a rule by a dealer. *See id.* § 2301.351(1) (West 2004) ("A dealer may not . . . violate a board rule . . . ."). Whether Buddy Gregg has pled a viable cause of action under section 2301.805, in our view, is not before us, but would instead be an issue for the Tarrant County district court. The issue before us, rather, is whether the cause of action Buddy Gregg purports to assert under section 2301.805 implicates the Division's exclusive jurisdiction. Informed by *Subaru*, we conclude that it does.

Similarly, we express no opinion regarding whether, as Buddy Gregg presumes in its Tarrant County district court pleading, there exists a general private cause of action for damages

23

about Code violations, if any," to support its claim before it could recover damages in district court. *Id.* at 224-25.

The second reason relates to the pivotal question in the Second Agency Proceeding of whether or how the Division's order in the First Agency Proceeding impacted its decision as to whether Marathon violated the vertical-integration prohibition. Buddy Gregg's position regarding that question is straightforward: (1) the statutory vertical-integration prohibition bars a "manufacturer" from directly or indirectly owning an interest in a dealership, operating or controlling a dealer or dealership, or acting in the capacity of a dealer, *see* Tex. Occ. Code Ann. § 2301.476(c); (2) in the First Agency Proceeding, the Division found, and it was undisputed, that Marathon had been owning and operating a dealership and acting as a dealer at its Grand Prairie facility; (3) in the First Agency Proceeding, the Division concluded, with respect to the vehicles being sold at the dealership, that "Marathon is a motor home manufacturer;" (4) ergo, the First Agency Proceeding established as a matter of law that Marathon, a manufacturer, violated the vertical-integration prohibition by owning and operating a dealership and acting as a dealer. The validity of Buddy Gregg's argument ultimately depends on the point in time when the Division's order concluding that "Marathon is a motor vehicle converter" took effect vis a vis the Division's initial determination that Marathon was a converter. All of Buddy Gregg's causes of action are premised on the view that this conclusion immediately—and, in effect, retroactively—established that Marathon had been a manufacturer from the day it opened its dealership in March 2002. However,

resulting from "violation of code" or violation of the statutory stay, or whether, assuming the alleged Code violations occurred, either of Buddy Gregg's common-law claims would be viable.

24

we conclude that whether the Division's order in the First Agency Proceeding applied retrospectively, as Buddy Gregg suggests, or prospectively, and the date on which it took effect, are among the decisions that the legislature has delegated to the Division in the first instance.

In addition to granting the Division "the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by [the Code]," Tex. Occ. Code Ann. § 2301.151(a), the legislature has authorized it to "take any action that is specifically designated or implied under this chapter or that is necessary or convenient" to the exercise of that jurisdiction. *Id.* § 2301.151(b). The Division is also specifically charged with administering the Code, *see id.* § 2301.152 (West 2004), and empowered with "all powers necessary, incidental, or convenient to perform a power or duty expressly granted under this chapter," including the power to "initiate and conduct proceedings, investigations, or hearings; . . . make findings of fact on all factual issues arising out of a proceeding initiated under this chapter; . . . specify and govern appearance, practice, and procedures before the board; . . . adopt rules and issue conclusions of law and decisions, including declaratory decisions or orders; . . . issue, suspend, or revoke licenses; [and] . . . enforce a [Division] order." *Id.* § 2301.153(a) (West 2004). Further, the legislature has directed that the Code "be liberally construed to accomplish its purposes, including the exercise of the state's police power to ensure a sound system of distributing and selling motor vehicles through: (1) licensing and regulating manufacturers, distributors, converters, and dealers of motor vehicles; and (2) enforcing this chapter as to other persons to provide for compliance with manufacturer's warranties and to prevent fraud, unfair practices, discrimination, impositions, or other abuse of the people of this state." *See id.* § 2301.001 (West 2004).

25

In *Buddy Gregg I*, we concluded that the Division possessed authority under this statutory scheme to suspend enforcement of its First Agency Proceeding order to give Marathon 12 months from the date the order became final to restructure its licenses. *See Buddy Gregg I*, 156 S.W.3d at 102-03. By tailoring when such licensing determinations take effect, the Division can, among other goals within its statutory charge, avoid disruption to the "sound system of distributing and selling motor vehicles" that the Code is supposed to achieve. Moreover, as the Division found in the Second Agency Proceeding, it had explicit statutory authority to further suspend enforcement of its First Agency Proceeding order for "good cause" pending the final determination of *Buddy Gregg I*. *See* Tex. Occ. Code Ann. § 2301.755. It undisputedly did so.

We think it follows from the foregoing grants of authority that the Division had authority in the Second Agency Proceeding to initially determine the point in time when its First Agency Proceeding order, including its conclusion that "Marathon is a motor home manufacturer," became effective and altered the status quo of its original licensing determination that Marathon was a converter. Because Buddy Gregg's causes of action presume a particular outcome of that decision—i.e., that Marathon is considered a "manufacturer" retroactively to March 2002—they implicate the Division's exclusive jurisdiction and could not proceed unless and until that issue was first presented to the Division and resolved in Buddy Gregg's favor. *See Subaru*, 84 S.W.3d at 226.

In sum, the jurisdictional and procedural posture of the Second Agency Proceeding was an exercise of the Division's exclusive, original jurisdiction to determine, as the first step in the "hybrid claims resolution process" for Buddy Gregg's Code-based claim or claims, whether

26

Marathon had violated the vertical-integration prohibition. That inquiry required the Division to evaluate the extent to which its order in the First Agency Proceeding, including its conclusion that "Marathon is a motor home manufacturer," impacted that inquiry. That impact, in turn, depended largely on the point in time when the order took effect, a matter that the Division had exclusive power to determine in the first instance.

With this understanding of the Division's jurisdiction and role in the Second Agency Proceeding, we turn to the specific complaints Buddy Gregg has raised.

**Vertical-integration prohibition**

In support of its first issue, Buddy Gregg maintains that the Division's First Agency Proceeding order concluding that "Marathon is a motor home manufacturer," combined with the Division's unchallenged findings that Marathon was operating a dealership, established that Marathon had been violating the vertical-integration prohibition from the day it opened its Grand Prairie facility in March 2002. This, in Buddy Gregg's view, ends the inquiry, and additional considerations referenced by the Division in its Second Agency Proceeding order—Marathon's licensing status, the Division's choice of remedies, or Marathon's "good faith"—are simply irrelevant. Buddy Gregg further observes that the Division's finding and conclusion in the First Agency Proceeding were binding on the Division in the Second Agency Proceeding, especially where this Court affirmed the First Agency Proceeding order in *Buddy Gregg I*. *See Freightliner Corp. v. Motor Vehicle Bd.*, 255 S.W.3d 356, 363 (Tex. App.—Austin 2008, pet. denied). Consequently, Buddy Gregg reasons, the Division in the Second Agency Proceeding erred in failing to give preclusive effect to these findings and conclusions and instead adopting a contrary finding

27

and declaration that the "Board did not expressly find or conclude, and adopted no finding or conclusion, that Marathon violated any statutory stay, any other law or any Motor Vehicle Division rule" in the First Agency Proceeding and refusing to find in the Second Agency Proceeding that Marathon had violated the vertical-integration prohibition.

Buddy Gregg's arguments, as previously noted, presume that the Division's First Agency Proceeding order concluding that "Marathon is a motor home manufacturer" had the legal effect of establishing that Marathon was a manufacturer from the inception of its dealership operations in March 2002. Whether the order had that effect, again, was a decision exclusively for the Division in the first instance. The Division ruled against Buddy Gregg on that issue. It determined that its First Agency Proceeding order concluding that Marathon was a motor home manufacturer ultimately did not take effect until after Marathon had restructured its licenses and business operations to comply with the order. The gravamen of the Division's "findings" or conclusions, previously summarized, are that (1) the Division made an initial determination, before Marathon began operations in 2002, that Marathon was a converter of Prevost buses, not a manufacturer, and licensed it accordingly; (2) in March 2003, the Division issued its order in the First Agency Proceeding determining, for the first time, that Marathon was a manufacturer rather than converter, but suspended enforcement of the order for 12 months to give Marathon time to restructure its licenses; (3) the Division further suspended enforcement of the order pending final determination of the *Buddy Gregg I* appeal; and (4) these suspensions of enforcement ultimately did not end until November 30, 2006. By this time, Marathon had already restructured its licenses and business operations to, in effect, moot the vertical-integration complaint that had been the

28

immediate basis for Buddy Gregg's causes of action. Consequently, in the view of the Division (which Marathon echoes), the First Agency Proceeding order did not establish a Code violation, but instead, through the twelve-month restructuring period and suspension of enforcement during the appeals, established that Marathon was never a "manufacturer" and/or had remained a "converter" at all times relevant to Buddy Gregg's claims. Thus, the Division found in the Second Agency Proceeding, Marathon did not violate the vertical-integration prohibition, other Code provisions, or Division rules by "operating under its [converter and dealer] licenses" during the pendency of the First Agency Proceeding, the *Buddy Gregg I* appeal, and the 12-month restructuring period.[12]

---

[12] The Division also suggests that it possesses broad authority in the first stage of the "hybrid claims resolution process" simply to refuse to make findings of a Code violation if it sees fit as a matter of regulatory discretion. Relatedly, it contends that because the Division's order in First Agency Proceeding, even if containing fact findings corresponding to the statutory vertical-integration prohibition, did not contain a finding of a "Code violation" in so many words, and thus signaled the Division's refusal to find a Code violation. In support of this view of its authority, the Division cites our holding in *Buddy Gregg I* that the Division was not required to make the findings of Code violations that Buddy Gregg had demanded in that case. *See Buddy Gregg I*, 156 S.W.3d at 103-04. In *Buddy Gregg I*, however, we were not addressing the Division's duties in the "hybrid claims resolution process" because Buddy Gregg had not preserved that question. *Id.* at 104. Our holding regarding the Division's refusal to make the findings rested solely upon the broad discretion vested in the Division with respect to its enforcement of the Code. *See id.* at 103-04.

More generally, whatever discretion the Division possesses in the first stage of the "hybrid claims resolution process" is, of course, not unbounded, but is a function of statute. *See Subaru*, 84 S.W.3d at 220. Further, the legislature has made the Division's exercise of its powers subject to judicial review under the substantial-evidence standard. *See* Tex. Occ. Code Ann. § 2301.751(a), (c). That is, the Division's "findings, inferences, conclusions, or decisions" may be tested in court to determine if they are in violation of a constitutional or statutory provision; in excess of the Division's statutory authority; made through unlawful procedure; affected by other error of law; not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *See* Tex. Gov't Code Ann. § 2001.174 (West 2008). If a Division decision refusing to make findings of Code violations fails this test, the reviewing court, while not empowered to make such findings itself, *see Buddy Gregg Motor Homes, Inc.*

In seeking reversal, Buddy Gregg argues essentially that the Code compelled the Division to treat its First Agency Proceeding order concluding that "Marathon is a motor home manufacturer" as effective retroactively as of March 2002 and thereafter. We have already concluded that the Code grants the Division discretion to do otherwise. Buddy Gregg has not shown that the Division committed legal error, acted outside of its authority, or is otherwise subject to reversal under the substantial-evidence standard for determining that the First Agency Proceeding order did not take effect until November 30, 2006. Consequently, Buddy Gregg's central premise in arguing that the First Agency Proceeding order established a vertical-integration violation and requires reversal of the Division's order in the Second Agency Proceeding fails.[13]

It follows from these conclusions that the Division's findings that Marathon was initially licensed as a converter and that the Division suspended the effect of its First Agency Proceeding order do not, as Buddy Gregg urges, demonstrate reliance on "legally irrelevant factors." Instead, these factors are integral to and supportive of the Division's decision. Buddy Gregg also complains that Marathon's "good faith full disclosure of its operations to the Motor Vehicle

---

*v. Liberty Coach, Inc.*, 179 S.W.3d 589, 603 (Tex. App.—Austin 2005, pet. denied), nonetheless must reverse and remand the order to the Division. *See* Tex. Gov't Code Ann. § 2001.174(2).

That being said, we intend no comprehensive explication as to where the outer parameters of the Division's authority in the first stage of the "hybrid claims resolution process" might be. We hold only that Buddy Gregg has not established that the Division's order on appeal exceeds that authority or any other basis for reversal under the substantial-evidence standard.

[13] In light of these holdings, we do not reach Marathon's assertions that Buddy Gregg waived any right it possessed to obtain the findings required in the first stage of the "hybrid claims resolution process" by failing to seek them from the Division in the First Agency Proceeding, *see Buddy Gregg I*, 156 S.W.3d at 104, or address whether this complaint is properly directed to this Court or the Tarrant County district court.

Division," also cited in the Division's Second Agency Proceeding order, is legally irrelevant. Assuming without deciding that Marathon's good faith is irrelevant to the controlling issues, Buddy Gregg has not demonstrated that the Division's decision turned on this factor or that any consideration of it prejudiced Buddy Gregg's substantial rights in the Second Agency Proceeding. To the contrary, the Division's decision in the Second Agency Proceeding regarding when its First Agency Proceeding order took effect was a function of the legal consequences of its prior actions in the First Agency Proceeding of giving Marathon a twelve-month restructuring period and suspending enforcement of the order pending appeal.

We overrule Buddy Gregg's first issue.

**Procedural rights**

In Buddy Gregg's second issue, it complains that Division's procedures in the Second Agency Proceeding failed to comply with statutory and constitutional requirements. In particular, Buddy Gregg argues that it was entitled to an evidentiary hearing and discovery concerning "material facts" underlying the Division's order. This complaint is without merit. The central issue in the Second Agency Proceeding, as previously explained, turned on a question of law—when the Division's First Agency Proceeding order concluding that "Marathon is a motor home manufacturer" took effect. There were no disputed material facts bearing on that inquiry. Buddy Gregg has not shown its substantial rights were prejudiced by not having discovery and an evidentiary hearing on these issues of law.

Relatedly, Buddy Gregg also argues in its second issue that the Division erred or abused its discretion in refusing to allow it to expand the scope of the Second Agency Proceeding

31

to include its claims against CEMTSM and other third parties. We cannot conclude the Division erred or abused its discretion. Buddy Gregg's pending petition in Tarrant County district court—what triggered the "hybrid claims resolution process" in this case—asserted claims solely against Marathon. Although Buddy Gregg alleged that its claims against additional parties in the Second Agency Proceeding were a predicate for civil damages claims that it had not yet filed in court, we are aware of no requirement under the Code or elsewhere that compelled the Division to permit Buddy Gregg to pursue the first stage of the "hybrid claims resolution process" as to its new claims in the same proceeding as its original claims. *See Buddy Gregg I*, 156 S.W.3d at 102 ("[T]he legislature has granted the [Division] wide discretion to fashion the procedural mechanisms through which it exercises its jurisdiction.").

We overrule Buddy Gregg's second issue.

**Substantial evidence**

Finally, in its third issue, Buddy Gregg challenges some of the Division's findings as not being supported by substantial evidence. In particular, Buddy Gregg complains of the Division's findings that "Marathon obtained its licenses after good faith full disclosure of its operations to the [Division]" and its findings that Marathon did not violate the Code or Division rules by "operating under its licenses" during the pendency of the First Agency Proceeding and *Buddy Gregg I*. As discussed in connection with Buddy Gregg's first issue, Buddy Gregg cannot show harm with respect to the Division's finding of Marathon's "good faith." As for Buddy Gregg's other challenges, the point of these findings (really conclusions of law), as previously explained, was that Marathon, having previously been determined to be a converter and licensed accordingly,

32

retained that status, and did not become a "manufacturer," until November 30, 2006.  For reasons previously explained, the content of the First Agency Proceeding order and subsequent suspensions of enforcement, all of which are undisputed, supported the Division's findings.

Buddy Gregg also asserts that substantial evidence did not support the Division's refusal to grant relief on its counterclaims.  We have already concluded that the Division did not err or abuse its discretion in declining to expand the Second Agency Proceeding to address Buddy Gregg's claims against entities other than Marathon.  To the extent Buddy Gregg is complaining of the Division's disposition of its counterclaims against Marathon, we share the observations of the Division and Marathon that Buddy Gregg's claims are merely the converse of Marathon's affirmative declaratory claims, and thus were disposed of by the Division's grant of relief to Marathon.

We overrule Buddy Gregg's third issue.

## CONCLUSION

Having overruled Buddy Gregg's issues on appeal, we affirm the Division's order.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   September 10, 2010

33