**RAILROAD COMMISSION of Texas et al.,**
**Appellants,**

v.

**Loyce PHILLIPS et al., Appellees.**

No. 11067.

Court of Civil Appeals of Texas.

Austin.

Jan. 30, 1963.

Will Wilson, Atty. Gen., Waggoner Carr (successor), Linward Shivers, Asst. Atty. Gen., Black & Stayton, Austin, for appellants.

Powell, Rauhut, McGinnis, Reavley & Lochridge, Frank Douglass and Donald F. Nobles, Austin, for appellees.

HUGHES, Justice.

This appeal is from a judgment declaring null and void an order of the Railroad Commission of Texas, dated May 25, 1962, made without notice or hearing, in relation to the assignment of acreage for proration purposes in the Nan-Su-Gail (Sub-Clarksville) gas field in Freestone County, and enjoining enforcement of it. The judgment also reinstated a productive acreage order of the Commission for this field dated January 10, 1962, and ordered compliance therewith.

In the order of May 25, 1962, the Frank Devereux lease was, for the first time, assigned an allowable based on a unit assignment of acreage, the Commission reciting in such order that it had "considered the evidence submitted with the completion of Wise Operating Company's Frank Devereux Well No. 1 and ruled that all units reduced as a result of two hearings held August 17, 1961, and November 11, 1961, be reinstated effective May 23, 1962."

In this May 25th order the acreage assigned to appellees Jack L. Phillips and Loyce Phillips, while somewhat increased, constituted a smaller percentage of the field's total productive acreage owned by and previously assigned to them. This resulted from acreage being assigned to the Devereux well.

As a result of the Commission order of May 25th appellees have lost approximately 8% of the total gas allowable for this field, the value of which for the months of July, August and September, 1962, aggregated $4,400.00. This percentage of loss will continue for the life of the field if the order of May 25th stands.

The Frank Devereux Well No. I was drilled and completed as a producing gas well under these circumstances:

On March 21, 1962, appellant Watson Wise, d/b/a the Watburn Oil Company, made application to the Railroad Commission to drill a "Wildcat" Well No. I on the Frank Devereux 82.65 acre lease in Freestone County, to a depth of 5500 feet to the Woodbine zone or reservoir. The surface site of this well was found by the Commission to be in the Nan-Su-Gail field area. On March 23, 1962, the Commission issued a permit for this well which recited: "Regular provided this well is never completed in the Nan-Su-Gail Woodbine field for which field rules have been adopted." In an amended permit of the same date it was stated: "Regular provided this well is never completed in the Nan-Su-Gail Woodbine or Sub-Clarksville fields for which field rules have been adopted."

The Frank Devereux Well No. I was drilled to a depth of 4616′ where it was completed April 1, 1962, as a gas producer in the Sub-Clarksville formation. It was not drilled to the Woodbine formation which is found some 400′ lower. The well is perforated in and produces from a reservoir found at a sub-sea depth of from 4084′ to 4094′.

The Frank Devereux Well No. I was drilled (as completed) in violation of the spacing and density rules for the Nan-Su-Gail (Sub-Clarksville) field.

■ Appellants base their defense of the Commission order of May 25th partly on the ground that appellees are judicially estopped to attack it. The facts supporting this contention are, in substance:

The Commission has held two hearings after notice to the operators to determine the productive acreage that may be assigned gas wells completed in the field. In making such productive acreage determination the Commission necessarily had to fix the productive limits of the field. Appellees have taken the position that on the east the productive limit of the field is fixed by a gas-water contact found at a sub-sea depth of –4070 feet. It has been appellees' contention that a well completed below that sub-sea depth would produce water or, if it produced hydrocarbons, would produce such hydrocarbons from some reservoir other than the Nan-Su-Gail.

The Commission has accepted the above described contention of appellees, that is, in determining the amount of productive acreage that may be assigned gas wells in the eastern portion of the field, the Commission has done so by reference to such gas-water contact. In doing so the Commission necessarily has been required to determine the location of the –4070 foot contour and to project the location of said contour to the surface, thereby fixing to the east the productive limit of the field.

The Commission upon occasion may have differed with appellees as to the precise surface location of the –4070 foot contour but it has always agreed with appellees that the productive limit of the field to the east is fixed by a gas-water contact found at a sub-sea depth of –4070 feet.

Appellant Wise has taken the position that the field or reservoir is not limited to the east by a gas-water contact found at a sub-sea depth of –4070 feet. The Commission has never agreed with appellant and has always determined productive acre-

age, that is, has always determined the productive limit of the field to the east, by reference to such gas-water contact.

By drilling the Frank Devereux Well No. I it was established that the productive limit of this field to the east is not defined by a gas-water contact found at a sub-sea depth of 4070', and that the contour lines based on this erroneous assumption are incorrect.

Appellants cite no authorities to support their plea of judicial estoppel. We find none, and would not expect to do so since the matter before the Commission was in no sense judicial but purely of an administrative character.

We find no better statement of the principle to be applied here than the following statement of Chief Justice Archer in his opinion for this Court in Killingsworth v. Broyles, Tex.Civ.App., 300 S.W.2d 164:

"There is a distinction between judicial process and the administrative process, which, in general, precludes the application of the doctrine of res adjudicata to administrative proceedings. In judicial proceedings courts apply law to past facts which remain static and on the other hand administrative bodies are concerned with fluid facts and changing policies."

Our statutes provide:

"In recognition of past, present, and imminent evils occurring in the production and use of natural gas, as a result of waste in the production and use thereof in the absence of correlative opportunities of owners of gas in a common reservoir to produce and use the same, this law is enacted for the protection of public and private interests against such evils by prohibiting waste and compelling ratable production." Sec. 1, Art. 6008, Vernon's Ann. Civ.St.

"It shall be the duty of the Commission to prorate and regulate the daily gas well production from each common reservoir in the manner and method herein set forth. The Commission shall prorate and regulate such production for the protection of public and private interests:

"(a) In the prevention of waste as 'waste' is herein defined;

"(b) In the adjustment of correlative rights and opportunities of each owner of gas in a common reservoir to produce and use or sell such gas as is permitted in this Article." Sec. 10, Art. 6008.

Commenting upon the authority conferred by these statutes, upon the Commission, this Court in Railroad Commission v. Humble Oil & Refining Co., Tex.Civ.App., 193 S.W.2d 824, 828, writ. ref., N.R.E., stated:

"The Commission's power to regulate oil production in the interest both of conservation and of protecting correlative rights is a continuing one, and its proration orders are subject to change, modification or amendment at any time, upon due notice and hearing, either upon the Commission's own motion or upon application of an interested party. This principle is now so well established as to require no citation of authority. * * *"

See also 2 Am.Jur.2d, Sec. 525, Administrative Law, for a discussion of the continuing jurisdiction of an administrative agency.

■ Appellants, in the absence of authority to support their plea of judicial estoppel, draw an analogy between the doctrine of res adjudicata which they state is applicable to administrative actions and the "corollary doctrine" of judicial estoppel. It is quite true that certain types of administrative actions are properly within the scope of the principle of res adjudicata. It is the nature of the action, however,

which is controlling. We quote from 2 Am. Jur.2d, p. 307:

"In general, the answer given by the courts to the question whether an administrative determination is capable of being res judicata depends upon the nature of the administrative action involved, and the doctrine of res judicata has been applied to administrative action that has been characterized by the courts as 'adjudicatory,' 'judicial,' or 'quasi-judicial,' while to administrative determinations of 'administrative,' 'executive,' 'legislative,' or 'ministerial' nature the rules of res judicata have been held to be inapplicable."

See also 73 C.J.S. Public Administrative Bodies and Procedure § 147; National Labor Relations Board v. Baltimore T. Co., 140 F.2d 51, Cir.Ct.Appeals, 4th Cir.

We cannot conceive of a more administrative function than a determination of the outlines of a gas field for proration purposes. It is, therefore, our opinion that appellees are not judicially estopped to insist upon adherence to the rules promulgated by the Commission for the Nan-Su-Gail (Sub-Clarksville) field under knowledge now extant even though they have previously and advantageously contended before the Commission the existence of facts now known to be untrue.

Appellants also urge that the Frank Devereux Well No. I has been completed in accordance with the terms of the permit under which it was drilled because it was completed at a sub-sea depth below 4070', and hence has not been completed in the Nan-Su-Gail (Sub-Clarksville) field as delineated by the Commission. Similarly, they contend that the Commission could have issued a regular location permit for the drilling of the Frank Devereux Well No. I provided only that such well not be completed above a sub-sea depth of 4070', since the Commission had accepted such depth as the eastern limit of the field.

We cannot sustain these contentions. They are without factual basis. The well was completed in the Nan-Su-Gail (Sub-Clarksville) field. The Commission did not, in the permit under which the well was drilled, say that the well could not be completed above or that it could be completed below the sub-sea depth of 4070'. It was plainly and unambiguously conditioned, "Regular provided this well is never completed in the Nan-Su-Gail Woodbine or Sub-Clarksville fields for which field rules have been adopted." The Frank Devereux Well No. I was completed in violation of the terms of this permit. No amount of legerdemain can alter this fact. It is an illegal well.

The judgment of the Trial Court is affirmed.

Affirmed.