**CHAMPLIN EXPLORATION, INC., Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS, Appellee.**

No. 13431.

Court of Appeals of Texas, Austin.

Jan. 20, 1982.

Rehearing Denied Feb. 10, 1982.

B. D. St. Clair, McGinnis, Lochridge & Kilgore, Austin, for appellant.

Mark White, Atty. Gen., Ralph T. Aldave, Asst. Atty. Gen., Austin, for appellee.

SHANNON, Justice.

Appellant, Champlin Exploration, Inc., filed in the district court of Travis County an administrative appeal from the order of appellee Railroad Commission of Texas in Oil & Gas Docket No. 3–73,200. After hearing, the district court rendered judgment affirming the Commission's order. This Court will affirm the judgment of the district court.

Champlin initiated a Railroad Commission proceeding in Docket No. 3–73,200 by complaining that certain wells in the Giddings Field operated by Humble Exploration Company, Inc., were assigned excessive production allowables. The production allowables were excessive, it argued, because the Railroad Commission improperly assigned "tolerance acreage" to such wells in violation of the special field rules. In response, the Commission convened a hearing to review all proration units in excess of eighty acres that were assigned to wells in the field.

At hearing, Champlin presented evidence tending to prove Humble had violated the special field rules in forming proration units larger than eighty acres in size, had received assignment of allowables based on improper assignment of tolerance acreage, and had produced oil exceeding amounts allowed under the field rules. Champlin also advanced evidence tending to prove that the production advantage gained by Humble by violating the special field rules had injured Champlin's correlative rights, had resulted in drainage of hydrocarbons under Champlin's lease, and had adversely affected Champlin's opportunity to recover its fair share of the hydrocarbons underlying its lease.

After hearing, the Commission concluded that proration units of greater than eighty acres formed by the pooling of off-lease acreage violated the special field rules. The Commission determined further that certain units in the field, including one Humble unit, contained more than eighty acres. The Commission ordered that the allowables for wells in such units be reduced to no more than an eighty-acre allowable effective September 1, 1979. The order provided further that such wells make up any production resulting from the improper assignment of tolerance acreage by producing at no more than fifty percent of the assigned allowable until such production was made up.

Champlin alleged in its appeal to district court that the Commission erred (1) in not ordering Humble to make up its over-pro-duction obtained in the Giddings Field prior to September 1, 1979, and (2) in concluding that correlative rights had not been adversely affected by the improper assignment of pooled acreage to proration units in the Giddings Field. In affirming the Commission's order, the judgment of the district court specifically denied Champlin's requested relief.

Champlin claims on appeal to this Court the district court erred in refusing to strike from the Commission's order the conclusion that correlative rights had not been affected by the violation of the field rules. Champlin fears that the Commission's conclusion may bind it in a subsequent claim for damages against Humble. Champlin did not appeal the district court's affirmance of that part of the agency order requiring Humble to make up its overproduction only for that period of time after September 1, 1979.

The Commission answers that Champlin may not appeal to this Court for the sole purpose of requesting the Court to strike a conclusion from the Commission's order where no challenge is made of the order itself and where Champlin has failed to demonstrate that it has been aggrieved.

■ In general, a party appeals from a judgment and not from a finding or conclusion in support of the judgment. *Rios v. Davis*, 373 S.W.2d 386, 388 (Tex.Civ.App. 1963, writ ref'd). A party who has prevailed fully in the lower court is not entitled to appeal from the judgment solely for the purpose of attacking as erroneous the court's conclusions of law in support of its judgment. *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 414 Ill. 275, 111 N.E.2d 329 (1953).

Champlin acknowledges these general rules, but asserts that the Administrative Procedure Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a § 19(e) (Supp.1981), authorizes its appeal from a conclusion of the agency without attacking the order itself. More specifically, Champlin relies upon the language in § 19(e) which empowers the trial court, upon judicial review of an agency order, to

affirm the decision of the agency in whole or in part and shall reverse [the agency decision] or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

As stated by Champlin, the rule in construing a statute is to ascertain, if possible, the intention of the legislature as expressed in the language of the statute. *State v. Terrell*, 588 S.W.2d 784, 786 (Tex. 1979); *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777 (Tex.1974). A corollary rule of statutory construction is that the court must not refer solely to one particular section of the statute, but instead must look to all applicable provisions of the Act. *Gerst v. Oak Cliff Savings & Loan Association*, 432 S.W.2d 702, 706 (Tex.1968).

Accordingly, § 19(e) should be read in conjunction with § 19(a) which provides that one "who is aggrieved by a final decision in a contested case" is entitled to judicial review of the agency decision. The term "final decision" without doubt refers to the final order of the agency. So construed, § 19(a) requires one to be aggrieved by a final order of the agency before he is entitled to an administrative appeal to the courts. An underlying finding or conclusion of an agency is not, of course, the equivalent of its final order. In this appeal the "final decision" of the Commission is its order in Docket No. 3–73,200 and not one or more of the underlying findings or conclusions. Considering § 19(a) and (e) together, this Court has concluded the Administrative Procedure Act does not alter the general rule so as to permit Champlin to maintain an appeal in this Court for the sole purpose of striking findings and conclusions with which it does not agree.

Champlin urges that the findings and conclusions in the Commission's order should be stricken because they may bind Champlin in a subsequent claim for damages against Humble. It is true that the rule prohibiting a prevailing party from appealing a favorable judgment to attack adverse findings is not without exceptions. One such exception applies where the finding or conclusion would operate as *res judicata* or collateral estoppel in a subsequent proceeding. Annot. 69 A.L.R.2d 701, 747 (1960).

For some time, it has been considered that *res judicata* and its subsidiary doctrine, collateral estoppel, were strangers to administrative law. 2 F. Cooper, State Administrative Law 503 (1965). Several Texas decisions reflect such assumption. *See Ellison v. Knapek*, 421 S.W.2d 474, 478 (Tex. Civ.App.1967, writ ref'd n. r. e.); *Railroad Commission v. Phillips*, 364 S.W.2d 408, 410–11 (Tex.Civ.App.1963, no writ); *Killingsworth v. Broyles*, 300 S.W.2d 164 (Tex. Civ.App.1957, no writ); *but see State Banking Board v. Proposed Central Park Bank*, 522 S.W.2d 717, 721 (Tex.Civ.App.1975, writ ref'd n. r. e.).

Recent out-of-state decisions indicate that *res judicata* applies, when appropriate, to administrative determinations.[1] One scholar, critical of the traditional view disallowing the use of *res judicata* in administrative determinations, suggests, "[T]he sound view is therefore to use the doctrine

---

1. See, e. g., *Jeffries v. Glacier State Telephone Co.*, 604 P.2d 4 (Alas.1979); *Venes v. Community School Bd.*, 43 N.Y.2d 520, 373 N.E.2d 987, 402 N.Y.S.2d 807 (1978); *McKee v. Ramsey County*, 310 Minn. 192, 245 N.W.2d 460 (1976); *Property Tax Dept. v. Molycorp, Inc.*, 89 N.M. 603, 555 P.2d 903 (1976); *Yavapai County v. Wilkinson*, 111 Ariz. 530, 534 P.2d 735 (1975); *Woodlawn Area Cit. Ass'n. v. Board of County Commissioners*, 241 Md. 187, 216 A.2d 149 (1966); *State v. District Court*, 259 Minn. 228, 107 N.W.2d 307 (1960); *Lubliner v. Board of Alcoh. Bev. Control*, 33 N.J. 428, 165 A.2d 163 (1960).

of res judicata when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in its favor." 2 K. Davis, Administrative Law Treatise § 18.02 at 548 (1958). For example, if an agency has granted a public pension to an applicant, it should not be allowed later to annul the award, absent a showing of fraud in its procurement. Conversely, if on initial consideration the application for pension benefits were denied, that denial should not bar the agency, upon reexamination, from granting the pension. 2 F. Cooper, *supra*, at 508.

Nevertheless, an administrative determination should not be regarded as *res judicata* for the purpose of subsequent *judicial proceedings*. Although an agency decision may be binding on the agency, it will not be given *res judicata* effect in court. *Alylward v. State Board of Chiropractic Examiners*, 31 Cal.2d 833, 192 P.2d 929 (1948), 2 F. Cooper, *supra* at 527. See *Bolton v. Coats*, 533 S.W.2d 914, 917 (Tex. 1975).[2]

The judgment of the district court is affirmed.

Affirmed.

---

2. In *Bolton*, the Court stated:

In no event does the order [of the Railroad Commission] shield Coats and his assignees from damages due to drainage of oil from the Burnett sand by wells on adjacent leases if it is found [by the trier of fact] that a reasonably prudent operator would have sought a permit to drill protective off-set wells on the 673 acres.