

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1547-10

---

### Ex parte DUSTIN DOAN, Appellant

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### TRAVIS COUNTY

---

*Womack, J., delivered the opinion of the Court, in which Meyers, Price, Johnson, Cochran, and Alcalá, JJ., joined. Johnson, J., filed a concurring opinion, in which Cochran and Alcalá, JJ., joined. Keller, P.J., filed a dissenting opinion, in which Keasler and Hervey, JJ., joined.*

The issue in this case is whether the doctrine of *res judicata* applies to bar a prosecution for a criminal offense in one county after a prosecutor in another county unsuccessfully attempted to revoke the defendant's community supervision on the ground that he commmitted the same offense.

The Third Court of Appeals "h[e]ld that it does not, as [a] Brazos County [community-supervision] revocation hearing did not involve the same parties that the Travis County theft

prosecution does."[1] We hold that the two prosecutions did involve the same parties.

## I. Proceedings Below

After the appellant was placed on community supervision in Brazos County, the Travis County Attorney charged him with a misdemeanor theft in Travis County. The Brazos County Attorney moved to revoke the appellant's community supervision, alleging that the appellant had committed the theft offense in Travis County. At the hearing on the motion to revoke the Brazos County community supervision, the prosecutor called the appellant's probation officer to the stand to ask her how the appellant had violated the condition of community supervision that prohibited committing other crimes.  The appellant objected on the basis of hearsay, and the trial judge sustained the objection. The prosecutor made no further effort to introduce evidence of the theft. Finding that the State had failed to meet its burden of proof, the Brazos County court denied the motion to revoke.

In the theft prosecution in Travis County, the appellant filed a pretrial application for a writ of habeas corpus seeking to bar any further prosecution of the theft offense under the doctrine of issue preclusion. The trial court initially granted relief, but, when the State moved for reconsideration on the basis that the Brazos County judge's ruling was too vague to constitute a final adjudication of a specific fact question, the trial court entered an order denying relief. This appeal followed.

In the Court of Appeals, the appellant argued that the trial court erroneously ruled that *Ex parte Tarver*[2] "demand[s] a specific finding of 'Not true' to an allegation in a motion to revoke

---

[1] *Ex parte Doan*, 322 S.W.3d 896, 898 (Tex. App.—Austin, 2010).

[2] 725 S.W.2d 195 (Tex. Cr. App. 1986).

before the doctrine of [issue preclusion] may be invoked." Without addressing that argument, the Court of Appeals affirmed the trial court's ruling based on its reading of *Reynolds v. State*,[3] in which (adopting the concurring opinion in *Brabson v. State*)[4] we held that for issue-preclusion purposes the Department of Public Safety and a district attorney's office should not be considered the same parties.

While the Court of Appeals noted that the parties and circumstances in this case differ from those in *Reynolds* and *Brabson*, it cited those cases in concluding that the Travis County Attorney and the Brazos County Attorney were different parties for the purposes of issue preclusion.[5] The Court of Appeals gave two reasons: (1) The instant case did not involve a person "criminally prosecuted twice for the same event," so double-jeopardy protections were inapplicable. (2) "[T]he Brazos County Attorney and the Travis County Attorney are independent entities with no control over each others' decision-making processes. This means, crucially, that the Brazos County Attorney had no authority to represent the interests of the Travis County Attorney."

## II. The Tension Between *Reynolds* and *Brabson*

The fact that the Brazos and Travis County Attorneys do not control each others' decision-making processes may well mean that they do not have "authority" to represent each other in court, but the appellant presents us with a more fundamental argument. His assertion, in

---

[3] 4 S.W.3d 13, 17 (Tex. Cr. App. 1999).

[4] 976 S.W.2d 182, 186 (Tex. Cr. App. 1998) (Womack, J., concurring) (stating that the "crucial point" is "whether or not in the earlier litigation the representative of the government had authority to represent its interests in a final adjudication of the issue in controversy," and concluding that "[t]he Department of Public Safety does not have such general authority to represent the interests of prosecutors").

[5] *Doan*, 322 S.W.3d, at 901.

essence, is that in a community supervision revocation proceeding and in a criminal trial, both styled, "The State of Texas v. Dustin Doan," the State is the same party in both cases, regardless of which prosecuting authority represents the State.

At first glance, we appear to have decided that exact issue in *Reynolds*:

> While there is some merit to the position that the Texas Department of Public Safety and a District Attorney represent the same client which is the citizens of this State, these governmental entities nevertheless should not be considered the same parties for [issue preclusion] purposes in cases like this. The citizens of this State have no power, as does a private litigant, to control the course of the litigation by the lawyers representing these governmental entities. These lawyers exercise governmental powers in the public interest. They do not represent any private citizen interest as does a private lawyer.[6]

Each sentence in that paragraph is accurate, on its own. But if the last three sentences are understood as the basis for the holding in the first sentence, the rule becomes stunningly broad. If the reason that the Dallas County District Attorney was not bound by an adverse determination made in a hearing where a DPS attorney represented the State is because the citizens of Texas could not control either attorney, then *Reynolds* would seem to make any government action immune from claims of *res judicata*, because in our republican system the citizenry cannot directly control any government attorney. Taken further, this rule could even seem to prevent courts from requiring government appellate attorneys to stand by the actions and arguments of government trial attorneys, as the citizens of Texas have no ability to control either and both are exercising powers in the public interest.

This has not been how we or the courts of appeals have understood *Reynolds*.[7] That is

---

[6] *Reynolds*, 4 S.W.3d, at 17.

[7] *See, e.g., Doan*, 322 S.W.3d, at 900-01 (applying "the parties analysis set forth in *Reynolds*" by analyzing whether the Travis County Attorney and Brazos County Attorney could control each other).

understandable, since *Reynolds* adopted the concurring opinion in *Brabson*. The *Brabson* concurrence set forth a much narrower test for considering government agencies to be the same party (or in privity) for purposes of *res judicata*: "whether or not in the earlier litigation the representative of the government had authority to represent its interests in a final adjudication on the merits."[8] This question, not the overly-broad blanket statement from *Reynolds*, is the correct test for whether a judgment involving one government agency is *res judicata* in a suit involving another government agency.

To answer that question in this case, we must look at the procedures and issues involved in the Brazos County revocation hearing and in the Travis County criminal prosecution, and ask whether the government prosecutors had the same interests and authority to litigate to a final adjudication.

### III. The Nature of Revocation Hearings

A community supervision revocation hearing is distinct from a criminal trial, but are its issues and procedures similar enough to a criminal trial to bind parties in future criminal trials? To determine whether prosecutors in a revocation hearing can represent the interests of prosecutors at future criminal trials, we must reexamine some of our prior notions of what interests are at stake in revocation hearings.

We have stated more than once that revocation proceedings are "administrative in nature."[9] We began using the label as a result of confusion about federal law, and we have

---

[8] *Brabson*, 976 S.W.2d, at 188 (Womack, J., concurring) (citing *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403 (1940).

[9] *Hill v. State*, 480 S.W.2d 200, 202-03 (Tex. Cr. App. 1972) (op. on rehear.); *see, e.g., Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Cr. App. 1993) (referring to revocation proceeding as an "administrative hearing").

expanded on that confusion over the years. Using the word "administrative" became a way of stating that defendants in revocation hearings do not enjoy the same panoply of procedural rights as defendants in criminal trials. This is true, as far as it goes, but our characterization of a judicial proceeding as an administrative proceeding is, on its face, inaccurate. Moreover, we have used the "administrative" label to imply that we would not strictly enforce procedural rules at revocation hearings, which was an injudicious and inaccurate implication.

The first case to refer to a revocation proceeding as "administrative" seems to have been

*Hill v. State*:

> A [community supervision] revocation hearing is not an adversarial proceeding, a civil action, or a criminal prosecution. *Hyser v. Reed*, [318 F.2d 225 (D.C. Cir. 1963)]; *Hood v. State*, [458 S.W.2d 662 (Tex. Cr. App. 1970)] instead, it is administrative in nature, a means of protecting society and rehabilitating lawbreakers. *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970); *United States ex rel. Lombardino v. Heyd*, [318 F.Supp. 648 (E.D. La. 1970)].[10]

None of the cited cases, however, supports the proposition that a Texas community supervision revocation proceeding is "administrative in nature." The only Texas case cited, *Hood*, states that a community supervision revocation is not a "'trial' as that term is used by the Constitution," even if the act for which revocation is sought is a criminal offense, and therefore the appellant was not entitled to a jury at his revocation hearing. Holding that a revocation hearing is not a trial, though, does not mean that it is an administrative hearing, and *Hood* did not say that it did.

The other cases either deal entirely with federal law or confuse federal law with the law of another state.

*Hyser* dealt with federal constitutional claims lodged by federal parolees against the

---

[10] 480 S.W.2d, at 202-03.

federal government in relation to their parole revocation hearing before the United States Board of Parole, an administrative agency.

*Sperling* was a habeas corpus application by a federal parolee alleging that the United States Board of Parole, an administrative agency, violated his federal constitutional rights by revoking his parole based on illegally seized evidence.

*Lombardino* was a federal case from Louisiana where the petitioner alleged that the state trial court violated his federal constitutional rights by revoking his community supervision based on illegally seized evidence. The federal district court in *Lombardino* rejected this claim because, based on *Hyser* and *Sperling*, a community supervision proceeding is "administrative in nature." *Lombardino* ignored any differences between federal parole revocation proceedings, which actually are decided by an administrative agency, and a Louisiana community supervision revocation proceeding, which seems to have been held in an open court in front of a trial judge.

None of these cases discuss the procedures of a Texas community supervision revocation proceeding, and *Hill* offered no other explanation of why a revocation hearing was an administrative hearing.

If the precedents we cited in *Hill* seem to have ignored the distinctions between parole and community supervision, and between federal and state law, there is good reason for that. *Hill* was decided at a period of time in which the federal Supreme Court was establishing constitutional due process standards for parolees and those on community supervision. Because the procedure for revoking community supervision in Texas is unusually judicial and adversarial, it was not obvious how the Texas community supervision system fit into the federal regime.

The federal due-process minimum was established by *Morrissey v. Brewer*,[11] in which the Supreme Court held that before parole could be revoked by an administrative agency a parolee was entitled to (1) a preliminary hearing before an officer other than the supervising parole officer, to determine whether reasonable ground exists for revocation of parole, and (2) a hearing before the parole authority before the final decision on revocation.[12] In *Gagnon v. Scarpelli*,[13] the Court extended those due-process requirements to administrative-agency proceedings to revoke probation.

In community-supervision revocations in Texas, the Code of Criminal Procedure does not provide for the preliminary hearing required by *Morrissey* and *Scarpelli*. Is this a denial of due process? Apparently it is not. A Texas probationer presented to the Supreme Court the question, "Does Texas Code of Criminal Procedure art. 42.12[,§ 21], which does not require state to hold a preliminary hearing to determine probable cause to believe probationer has violated probation condition, violate, either on its face or as applied, Fourteenth Amendment's Due Process Clause?" After granting review and hearing oral argument, in which the Court heard about Texas's judicial probation-revocation procedure that provides trial-like proceedings, the Supreme Court dismissed the appeal "for want of a properly presented federal question."[14]

The Court's decision that due process does not require Texas to hold a preliminary hearing in probation revocation probably reflects the difference between the Texas system, which

---

[11] 408 U.S. 472 (1972).

[12] *Cf*. TEX. GOV'T CODE §§ 508.281 & 508.2811 (providing two steps of hearings in parole revocation).

[13] 411 U.S. 778 (1973).

[14] *Vincent v. Texas*, 449 U.S. 199 (1980) (per curiam).

is based in our courts, and the administrative system which was before the Court in *Scarpelli*. In that case the Court noted that a probation-revocation hearing in an administrative agency is unlike

> [A] criminal trial, [in which] the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights …. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation [toward rehabilitation]; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole.[15]

A community supervision revocation proceeding in Texas bears little resemblance to the administrative hearing described in *Scarpelli*. In Texas, the State is represented by a prosecutor, the defendant does have a right to counsel,[16] the hearing is before the judge,[17] formal rules of evidence do apply,[18] and there may be appeal directly to a court of appeals.[19] They are conducted entirely within the judicial branch. The Rules of Evidence and the exclusionary rule to bar illegally seized evidence apply fully in a Texas probation revocation hearing.[20] Indeed, aside from the burden of proof required to prove a community-supervision violation (preponderance of

---

[15]411 U.S., at 789.

[16]*See* TEX. CODE CRIM. PRO. 42.12, § 21(d).

[17]*See id.*, § 21(b).

[18] *See* TEX. R. EVID. 101(b) (Rules govern criminal proceedings except as provided by statute) & (d)(1) (not mentioning probation-revocation hearings as one of the proceedings to which the Rules do not apply).

[19] The thoroughly adversarial nature of a Texas community supervision revocation proceeding shows that *Hill* was incorrect when, based on federal law, it stated that a revocation proceeding was "not an adversarial proceeding."

[20] *Compare* TEX. R. EVID. 101(d) (list of criminal proceedings at which Texas Rules of Evidence are inapplicable does not include revocation hearings) to, *e.g.*, MISS. R. EVID. 1101(b)(3) (Mississippi Rules of Evidence inapplicable at revocation hearings). *See Moore v. State*, 562 S.W.2d 484, 486-87 (Tex. Cr. App. 1978).

the evidence, which is lower than the burden of proof beyond a reasonable doubt that is required to prove a new criminal offense), there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding.[21]

Following *Hill*'s holding that revocation proceedings were administrative proceedings, we applied administrative law to revocation hearings in *Davenport v. State.*[22]  After the trial court denied the State's motion to revoke Davenport's community supervision, the State filed a second motion for revocation two weeks later, alleging the exact same facts. This time the trial court revoked.

Davenport appealed to this court, alleging a violation of federal and state double-jeopardy protections, as well as a violation of common law *res judicata* principles. After quoting a previous case in which we held that jeopardy attached only in criminal trials that could result in convictions, we held that double-jeopardy protections did not apply to a revocation proceeding because it was

> a proceeding wherein the result is deemed to be neither a conviction nor acquittal … a proceeding that is not considered to be a trial, as that term is used and contemplated by the Constitution in reference to criminal cases … a proceeding which is not considered to be a criminal prosecution and is considered to be only administrative in nature.[23]

Our statement that the hearing was "only administrative in nature" was a phrase that we used in several cases as something of a pejorative to minimize the importance of procedural and

---

[21] While we noted that the practice was "not recommended," we have gone so far as to hold that it was not error for a trial court to combine a revocation hearing with a trial on the merits for a new offense. *See Moreno v. State*, 587 S.W.2d 405, 412-13 (Tex. Cr. App. 1979).

[22] 574 S.W.2d 73 (Tex. Cr. App. 1978) (implicitly overruled in part by *Ex parte Tarver*, 725 S.W.2d 195 (Tex. Cr. App. 1986)).

[23] *Id*., at 75 (quotations and citations omitted).

evidentiary requirements in revocation hearings.[24] This seems to be the same manner that we have used the phrase in more recent cases.[25]

In addressing Davenport's *res judicata* claim, we held that "the supervision of [those on community supervision] is an administrative function of the courts and not a judicial function."[26] We deteremined that "the doctrine of res judicata does not apply" to revocation proceedings because "res judicata does not apply to administrative decision-making."

For this last proposition, we cited to three cases that dealt with administrative law. Two of them, *Bryant v. L.H. Moore Canning Company*[27] and *Railroad Commission v. Phillips*,[28] dealt with decisions by administrative agencies. The third, *Killingsworth v. Broyles*,[29] seems to have dealt with a county judge acting in his administrative capacity to approve or disapprove an application for a license to sell beer. None of the proceedings in these cases seem to have been formal, judicial proceedings like a revocation hearing.

---

[24] *See, e.g., Bradley v. State*, 564 S.W.2d 727 (Tex. Cr. App. 1978) ("The hearing on a motion to revoke [community supervision] is not a trial in a constitutional sense, and such a hearing being administrative in nature, procedural and evidentiary requirements are not enforced as strictly as they would be in a criminal trial." (citation omitted)). This statement in *Bradley* may capture the flavor of our "administrative in nature" cases, but it cannot actually be true. If the "procedural and evidentiary requirements" are themselves less strict in a revocation setting, we would not be more lax in enforcing the requirements that did exist simply because it was an "administrative" hearing. Strict enforcement of lax rules should not be confused with lax enforcement of strict rules.

[25] *See, e.g., Cobb*, 851 S.W.2d, at 873 (referring to a community-supervision revocation proceeding as "an administrative hearing" before determining that formal proof of the conditions of community supervision was not required). *Cobb*'s note that a revocation proceeding was "an administrative proceeding" was immediately followed by the observation that, "[y]et the Rules of Criminal Evidence are generally applicable to a revocation hearing." Old Rule of Criminal Evidence 101(b) stated that the Rules of Criminal Evidence "govern criminal proceedings in courts of Texas ...." The Rules of Criminal Evidence did not state that they applied to administrative hearings.

[26] *Davenport*, 574 S.W.2d, at 76.

[27] 509 S.W.2d 432 (Tex. Civ. App.–Corpus Christi, 1974, no writ, cert. den. *sub nom. Pope v. Texas*, 419 U.S. 845 (1974)).

[28] 364 S.W.2d 408 (Tex. Civ. App.–Austin 1963, no writ).

[29] 300 S.W.2d 164 (Tex. Civ. App.–Austin 1957, no writ).

*Killingsworth* explained the difference between judicial and administrative proceedings: "In judicial proceedings courts apply law to past facts which remain static and on the other hand administrative bodies are concerned with fluid facts and changing policies."[30] It is true that, in some respects, there is an "administrative" nature to a trial court's decision in a revocation hearing. Even if a community-supervision violation is proven, the trial court has the discretion to continue or modify the terms of community supervision rather than revoking it, and the trial court has the discretion to make this determination based on its weighing of policies, such as protecting the public and rehabilitating the offender.

The fact that a decision includes some policy considerations, however, does not turn a distinctly judicial proceeding into an administrative one. Juries and trial courts weigh policy considerations, with great degrees of discretion, when determining whether to sentence the defendant to community supervision, but we would never characterize the punishment phase of a trial as an administrative proceeding.

A Texas community-supervision revocation proceeding involves the application of law to past facts that remain static. It is conducted according to judicial rules before a trial judge, not an administrative agency. Applying administrative law – the law that governs the decision-making processes of administrative agencies – to revocation hearings has no basis in the Code of Criminal Procedure. Community-supervision revocation proceedings are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings.

---

[30] *Killingsworth*, 300 S.W.2d, at 165.

## IV. Application

Our discussion of the many similarities between a Texas revocation proceeding and a criminal trial makes apparent how distinct this case is from *Reynolds.* Reynolds sought to use a ruling from an administrative license revocation hearing – a civil administrative hearing – in a criminal trial.[31] The vast difference in issues and procedure at these proceedings meant that the Department of Public Safety was not capable of representing the interests of the Dallas County District Attorney to a final adjudication.

In this case, however, the issues and procedures were nearly identical in the Travis County and Brazos County proceedings. In both proceedings, prosecutors plead and sought to prove that the appellant committed the same act. Both were criminal, judicial proceedings with nearly identical procedural rules, in which the State was represented by sworn prosecutors. The Brazos County Attorney had the authority to litigate the matter to a final adjudication.[32] The only difference between the interests of the Brazos County Attorney and the Travis County Attorney in this case is that one sought to prove theft in order to criminally punish the appellant for theft, while the other sought to prove theft in order have the appellant's criminal punishment from a prior case altered to his detriment.

This difference is sufficient to allow this case to escape the narrow grasp of the Double Jeopardy clause.[33] But as a matter of state law, a prosecuting authority who alleges a criminal

---

[31] *Reynolds*, 976 S.W.2d, at 183.

[32] *See Tarver*, 725 S.W.2d, at 199-200 (discussing ways in which trial courts ruling at a revocation proceeding is a final judgment).

[33] *Id.*, 197. The dissent states that we are "overrul[ing], *sub silentio*, the holding in *Ex parte Tarver* that double-jeopardy applies to probation revocations." We are not overruling *Tarver*.
The question of whether *Tarver* ruled that double-jeopardy principles applied at a probation revocation

offense in a community supervision revocation hearing represents the same state interests as a prosecuting authority who later alleges the same criminal offense in a trial. The Court of Appeals erred in holding that two prosecuting authorities could not be the same party for *res judicata* purposes.

We reverse the Court of Appeals's judgment and remand the case to that Court so that it may consider the claims briefed by the parties.

Delivered June 20, 2012.
Publish.

---

hearing is more complex than the dissent implies. *Tarver* itself stated that "basic double jeopardy protections" would not apply to revocation proceedings, before going on to hold that "collateral estoppel" – which, as the dissent observes, can be based in either Constitutional law or common law – barred Tarver's prosecution after the facts that the prosecution was based on were found not true at a revocation hearing. While *Tarver* did cite to some federal Supreme Court cases, it is not obvious whether *Tarver*'s holding was based in Constitutional law or common law; given *Tarver*'s explicit statement that double-jeopardy principles were not implicated by revocation hearings, and given that there were no prior cases from this court applying collateral estoppel, it is possible to read *Tarver* as using the federal cases only as explanations of common-law doctrine.

After reviewing our "administrative in nature" line of cases, Section III, *supra*, it appears that the primary issue in *Tarver* was not whether collateral estoppel in that case was required by the federal Constitution, but, rather, whether *res judicata*, whatever its basis, applied to administrative hearings. *See Tarver*, 725 S.W.2d, at 198-200. *Tarver* overruled *Davenport* by holding that *res judicata* did apply to a revocation hearing because a revocation, though "administrative in nature," involved the trial court acting in a judicial capacity. *Ibid*. In essence, *Tarver* held that, at a revocation hearing, the trial court was acting as an administrative agency acting as a trial court. It was only in holding that "administrative collateral estoppel" applied to Texas revocation proceedings and in stating the rule of collateral estoppel that *Tarver* used the reasoning of federal Supreme Court cases. *See ibid*.