# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00239-CV

**Appellant, Star Houston, Inc. //
Cross-Appellant, Volvo Cars of North America, LLC n/k/a Volvo Car USA, LLC**

**v.**

**Appellees, Volvo Cars of North America, LLC n/k/a Volvo Car USA, LLC and the Board
of the Texas Department of Motor Vehicles // Cross-Appellees, Star Houston, Inc.
and the Board of the Texas Department of Motor Vehicles**

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-000052, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## C O N C U R R I N G   O P I N I O N

I concur with the Court's conclusions that (1) Volvo has standing to bring its cross-appeal from the Board's Final Order, (2) the Board did not err by concluding that the CSI and SSI Dealer Incentive Programs violated Occupations Code Sections 2301.467(a) and 2301.468, and (3) the Board did not err by concluding that the other four Dealer Incentive Programs did not violate the statutory provisions alleged by Star. Therefore, I join in the judgment that the trial court's order is affirmed. However, I write separately because I disagree with the Court's analysis of why Volvo has standing to challenge the Board's rulings that the CSI and SSI programs violated the two statutory provisions.

In Volvo's cross-appeal, it challenges the Board's determination that the CSI and SSI programs violated the Occupations Code, arguing that there is not substantial evidence that supports the relevant findings of fact and conclusions of law. In response, the Board asserts that

Volvo lacks standing to bring its appeal. Relying on a common-law theory of standing, the Board contends that Volvo has no concrete injury because it is the prevailing party on the ultimate issue of Volvo's termination of Star's franchise agreement for good cause. *See, e.g.*, *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012) ("In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court."); *see also Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) ("The standing requirement derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the open courts provision, which provides court access only to a 'person for an injury done him.'" (quoting Tex. Const. art. I, § 13)). The Board argues that because it did not take any action against Volvo in the Final Order based on the two conclusions of law, such as requiring it to discontinue the CSI and SSI bonus programs, Volvo is not harmed by any part of the decision.[1]

---

[1] The Board also asserts that Volvo's alleged injury is not redressable by the Court because Volvo asks the Court to reverse the finding that the CSI and SSI programs violate the Occupations Code and to render a decision in Volvo's favor, correctly pointing out that we do not have the authority to render judgment. *See Heckman v. Williamson County*, 369 S.W.3d 137, 155-56 (Tex. 2012) (explaining that for plaintiff to satisfy redressability element of standing, "he must simply establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact'" (quoting *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)). Instead, "[i]n a suit for judicial review of an agency action, the reviewing court is empowered to issue only a general remand when it finds error that prejudices an appellant's substantial rights." *See Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 149 (Tex. App.—Austin 2005, no pet.) (citing Tex. Gov't Code § 2001.174(2)). I note that Volvo's request for relief beyond what the Court is empowered to grant does not render its injury not redressable. Were we to find that the Board erred by finding the programs violated the Code, we could either reverse the findings and conclusions and take no other action or reverse the findings and conclusions and remand for further proceedings if necessary. *See* Tex. Gov't Code § 2001.174(2).

Although the Board addresses Volvo's injury in terms of whether it is concrete and redressable, elements of the common-law standing analysis, it also contends that the Court may not reverse the Board's findings or conclusions under a substantial-evidence analysis. The Board argues that Volvo's substantial rights have not been prejudiced by the Board's decision "because Volvo won and nothing in the order adversely affects Volvo's rights. Because [the Board] did not order Volvo to discontinue use of its CSI/SSI bonus program, it may continue to use the program, and its rights are not prejudiced in any way."

Volvo counters that the Board's "erroneous findings and conclusions expose Volvo to further litigation and the risk of responsibility for alleged damages under the hybrid claims resolution process afforded by Section 2301.805 of the Texas Occupations Code," and therefore, it has standing because it is an aggrieved party under the Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."). "Standing to sue may be predicated on either statutory or common law." *Bickham v. Dallas County*, 612 S.W.3d 663, 669 (Tex. App.—Dallas 2020, pet. denied). "When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis, rather than common-law rules." *City of Dallas v. East Vill. Ass'n*, 480 S.W.3d 37, 43 (Tex. App.—Dallas 2015, pet. denied) (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984); *Everett v. TK–Taito, LLC,* 178 S.W.3d 844, 851 (Tex. App.–Fort Worth 2005, no pet.)). Accordingly, I would analyze Volvo's standing under the APA as an aggrieved party, rather than applying the common-law standing analysis advocated by the Board.

Courts applying the APA have held that to have standing to seek judicial review of an order, a party must be aggrieved by the final order, not merely by an underlying finding or

conclusion. *See, e.g., GTE Sw. Inc. v. Public Util. Comm'n of Tex.*, 37 S.W.3d 546, 548 (Tex. App.—Austin 2001, no pet.). Courts have also held that "[a] party is not aggrieved for purposes of APA section 2001.171 by a final order that provides the result that party sought." *City of Galveston v. Flagship Hotel, Ltd.*, 319 S.W.3d 948, 952 (Tex. App.—Austin 2010, pet. denied). Volvo argues that the Board misconstrues Volvo's challenge to the order as a complaint about conclusions of law and findings of fact that do not change the Board's order. As Volvo points out, in its underlying suit, Star both (1) filed a protest challenging whether Volvo had good cause to terminate Star's franchise and (2) asserted counterclaims challenging whether Volvo's Dealer Incentive Programs, including the CSI and SSI programs, violate various provisions of Occupations Code Chapter 2301. Therefore, Volvo argues, while Volvo sought the Board's ruling that Volvo had good cause to terminate Star's franchise, the Board's findings and conclusions that the CSI and SSI programs violate Code Sections 2301.467(a) and 2301.468 are not a result that Volvo sought.

In addition, even though in its order the Board did not take action against Volvo for the statutory violations, Volvo asserts that the Board's alleged error "has the potential to cause Volvo further injury because Texas implemented a 'hybrid claims resolution process' for certain civil damages claims relating to the sale of motor vehicles in Texas." *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 224 (Tex. 2002) (explaining that "the Code creates a hybrid claims-resolution process by which parties may seek damages for certain Code violations" and that "a party must exhaust administrative remedies to obtain a Board decision about Code violations, if any, to support a DTPA or bad-faith claim based on Code violations"); *Buddy Gregg Motor Homes, Inc. v. Marathon Coach, Inc.*, 320 S.W.3d 912, 916 (Tex. App.—Austin 2010, no pet.) (summarizing hybrid claims-resolution process for Code-based claims); *see also* Tex. Occ.

Code § 2301.805(a) (providing that dealer who has established certain Code violations may bring DTPA suit against manufacturer for damages). Volvo points out that under this process "*if a franchised dealer establishes certain violations* of the Occupations Code, including Sections 2301.467 and 2301.468, *the dealer* can seek damages that resulted from the violation." (Emphasis added (citing Tex. Occ. Code § 2301.805; *Subaru*, 84 S.W.3d at 222-26; *Buddy Gregg Motor Homes*, 320 S.W.3d at 914, 916). In a Section 2301.805 action, the trial court "must give deference to the findings of fact and conclusions of law of the board contained in any final order that is the basis of the action." Tex. Occ. Code § 2301.805(b). Accordingly, I would conclude that Volvo has standing as an aggrieved party under APA Section 2001.171 because the Board's findings and conclusions on Star's counterclaim for statutory violations were not a result sought by Volvo, and those findings and conclusions have the potential to be used against it in a Code-based proceeding by Star.[2]

I have two primary concerns with the Court's analysis. My first concern is that its statement about the res judicata effect of agency findings and conclusions may be misinterpreted as a change to the law. The Court states that this Court's opinion in *Champlin Exploration, Inc. v. Railroad Commission of Tex.*, 627 S.W.2d 250, 252 (Tex. App.—Austin 1982, writ ref'd n.r.e.),

---

[2] The Court offers its advisory opinion to the parties that a Section 2301.805 suit by Star would be unsuccessful. *See* slip op. at 11 n.5. The likelihood of success or failure of a Code-based suit by Star has no bearing on the question of its statutorily provided ability to bring such a suit and Volvo's accompanying interest in being able to challenge any findings and conclusions by the Board before needing to defend against the suit. Moreover, the viability of such a suit by Star is not a matter before the Court in this appeal. *See, e.g.*, *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (explaining that Texas Supreme Court has construed Texas Constitution's "separation of powers article to prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial department"); *see also* Tex. Const. art. II, § 1 (separation of powers).

identified an "exception for standing to challenge agency findings or conclusions," slip op. at 11, "where the finding or conclusion would operate as res judicata or collateral estoppel in a subsequent proceeding," *id.* at 10 (quoting *Champlin*, 627 S.W.2d at 252). However, in *Champlin*, the Court identified this exception as an exception to the more general appellate "rule prohibiting a prevailing party from appealing a favorable judgment to attack adverse findings," 627 S.W.2d at 252, not as an exception to the principle of administrative law "that an administrative determination should not be regarded as res judicata for the purpose of subsequent judicial proceedings," *id.* at 253. The Court further stated, "Although an agency decision may be binding on the agency, it will not be given res judicata effect in court." *Id.*; *Texas State Bd. of Veterinary Med. Exam'rs v. Jefferson*, No. 03-14-00774-CV, 2016 WL 768778, at *6 (Tex. App.—Austin Feb. 26, 2016, no pet.) (mem. op.) (citing *Champlin* as "recognizing that agency decision may be binding on agency even though it would not be given res judicata effect in court"); *see also Continental Imports, Inc. v. Mercedes-Benz USA, LLC*, No. 03-21-00377-CV, 2023 WL 114876, at *9 (Tex. App.—Austin Jan. 6, 2023, pet. filed) (mem. op.) ("An agency is not bound to follow its decisions in contested cases in the same way that a court is bound by precedent." (quoting *Flores v. Employees Ret. Sys. of Tex.*, 74 S.W.3d 532, 544-545 (Tex. App.—Austin 2002, pet. denied)). I would not go so far as to suggest that the Board may be bound by this decision in future administrative proceedings when it is not necessary to do so to decide whether Volvo has standing.

My second concern is that the Court's description of the hybrid claim-resolution process established by Occupations Code Section 2301.805 could be misinterpreted as allowing another dealer to use the Board's findings and conclusions against Volvo in a Section 2301.805 proceeding without first exhausting their own administrative remedies. *Compare* slip op. at 11 ("Accordingly, here, the question is whether the findings and conclusions made against Volvo's

6

CSI and SSI programs will preclude Volvo from contesting the same issues in a future proceeding *brought by a different dealer*." (emphasis added)) *with Buddy Gregg*, 320 S.W.3d at 916 (summarizing Texas Supreme Court's holding in *Subaru* and stating that "the legislature contemplated a 'hybrid claims resolution process' whereby a *plaintiff must first exhaust his remedies before the Division* 'to obtain a [Division] decision about Code violations, if any, to support a [Code-based] claim based on Code violations'" (emphasis added) (quoting *Subaru*, 84 S.W.3d at 224)). Although the Court states that Volvo argues "that it was aggrieved by the Final Order despite its lack of present action or relief because the rulings that the programs violated the two statutes could let other dealers 'seek damages that resulted from the violation' of applying the programs to those dealers," slip op. at 9, Volvo never mentions other dealers in its briefing or suggests that other dealers might be able use these adverse findings and conclusions against it in subsequent proceedings. Consequently, I would not express an opinion on the ability of other dealers to use the Board's findings and conclusions of statutory violations against Volvo in a subsequent proceeding. *See id.* ("Thus, other Volvo dealers who were subjected to CSI and SSI could raise against Volvo elsewhere the conclusions from the Final Order that those programs were deemed unlawful.").

Because I concur in the rest of the Court's analysis and with the disposition reached, I join in the judgment.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Filed: May 25, 2023